STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. ANN SHERRY, A/K/A ANN KREINER, DEFENDANT-RESPONDENT.

Argued October 13, 1965—Decided December 20, 1965.

174

*Mr. Nelson G. Gross,* Bergen County Counsel, argued the cause for appellant.

*Mr. Norman Fischbein* argued the cause for respondent.

The opinion of the court was delivered by

WEINTRAUB, C. J. This matter involves a motion for the return of moneys seized by police authorities.

Defendant Sherry was indicted for conspiracy to commit abortion and for the crime of abortion. Upon a plea of *non vult* to the conspiracy, she was sentenced to imprisonment. The abortion charge was dropped. She then moved in the criminal cause for an order directing the County to return to her the sum of $2,719.50 seized in a search of her apartment. The County resisted the claim as to $2,500, that being the amount the father of the pregnant girl allegedly paid defendant at the time of the abortion. The trial court ordered the entire sum to be paid to defendant and the Appellate Division affirmed, one judge dissenting. *State v. Sherry,* 86 *N. J. Super.* 296 (*App. Div.* 1965). The County's appeal comes to us as of right. *R. R.* 1 :2–1(b).

Sherry's application was supported by an affidavit in which she said cryptically that the sum of $2,719.50 was seized on January 23, 1961 by the office of the prosecutor and "That she is the lawful owner and has the right to said fund." No other facts were alleged, and the grounds of the application, as stated in the brief in support of the motion, were (1) that the seizure was made under a warrant which was "improvidently" issued and (2) that there is no statutory authority for the forfeiture of the moneys.

## I.

■ The County objected to Sherry's effort to try this controversy by affidavit. The County was correct. Whether the claim is made within the criminal cause or by an independent action, factual disputes must be heard upon live testimony with opportunity for cross-examination. Further, the issues should be framed so that the litigants will know what claims to meet and the trial judge will more readily comprehend precisely what must be decided. Here, the specific basis for the trial court's decision is not clear. In the Appellate Division the question the judges found critical and upon which they divided was whether the County proved the moneys seized included the $2,500 paid for the abortion involved in the criminal charge. Yet counsel for Sherry had almost conceded that fact in the argument of the motion in the trial court, and the trial judge made no finding upon it.

For the reasons hereinafter stated, we think the decisive question is whether the moneys seized included moneys paid for this abortion. To the extent that they did, Sherry would not be entitled to recover. The cause must be remanded to the trial court for a plenary hearing upon that issue.

## II.

Sherry contends that there cannot be a "forfeiture" of property unless a statute so authorizes and adds, accurately, that no such statute covers the situation before us. She says too that a "forfeiture of estate" is precluded by *N. J. S.* 2A:152–2 which reads:

"No conviction or judgment for any offense against this state, shall make or work corruption of blood, disinherison of heirs, loss of dower, or forfeiture of estate. * * *"

We think neither proposition is involved.

■ As to the first, we are not concerned with whether property owned by Sherry was forfeited because of some illegal use to which she put it; the question rather is whether she can claim title to the fruit of the illegal act, and if so,

whether she may have the aid of the court to retake it from the County.

As to the statute we have quoted, there is no effort here to deprive Sherry of her former estate because of a conviction for some crime unrelated to it. Nor is an effort made to take her general estate upon a generalized claim that it is the product of a life of crime. See *In re Ginsburg*, 147 *F. 2d* 749 (2 *Cir.* 1945). On the contrary, the question is whether Sherry has an enforceable right to enjoy the specific product of a criminal event. The statute does not deal with that subject. It does not displace judicial concepts of public policy with respect to acquisition or enforcement of property rights. Thus, for example, our cases hold that notwithstanding the statute, one who kills may not retain property which comes to him because of his victim's death. *Neiman v. Hurff*, 11 *N. J.* 55 (1952); *Merrity v. Prudential Ins. Co.*, 110 *N. J. L.* 414 (*E. & A.* 1933); *In re Estate of Kalfus v. Kalfus*, 81 *N. J. Super.* 435 (*Ch. Div.* 1963).

There seems to be no dissent from the view that a court will not order the return to the culprit of the fruit of the specific criminal venture with which he is charged. See *Clark v. United States*, 102 *U. S.* 322, 332, 26 *L. Ed.* 181, 184 (1880); *United States v. Teed*, 185 *F. 2d* 561 (9 *Cir.* 1950); *United States v. Thomas*, 75 *F. 2d* 369 (5 *Cir.* 1935); *United States v. Ortiz*, 140 *F. Supp.* 355 (*S. D. N. Y.* 1956); *United States v. Pagan*, 140 *F. Supp.* 711 (*S. D. N. Y.* 1955); *United States v. Sprinkles*, 138 *F. Supp.* 28 (*E. D. Ky.* 1956); *United States v. Connaughton*, 39 *F. 2d* 237 (*E. D. N. Y.* 1930); *United States v. Galbreath*, 8 *F. 2d* 360 (*N. D. Calif.* 1925); *Carr v. Hoy*, 2 *N. Y. 2d* 185, 158 *N. Y. S. 2d* 572, 139 *N. E. 2d* 531 (*Ct. App.* 1957); *Hofferman v. Simmons*, 290 *N. Y.* 449, 49 *N. E. 2d* 523 (*Ct. App.* 1943); *Petz v. Property Clerk*, 149 *N. Y. S. 2d* 179 (*Sup. Ct. Spl. T.* 1956); *cf. State v. Frye*, 194 *S. W. 2d* 692 (*Springfield Ct. App. Mo.* 1946). These cases find it incomprehensible that government should assist the guilty in a claim to the produce of their lawlessness. In essence there is applied in favor of

government the policy of the familiar rule that the courts will not aid a culpable party with respect to a criminal transaction. The New York cases cited above go even further; they not only hold that the judicial process is unavailable to that end, but say also that the offender has no title at all, that no man may "acquire property by his own crime." See *Carr v. Hoy, supra,* 2 *N. Y. 2d,* at *p.* 187, 158 *N. Y. S. 2d,* at *p.* 575, 139 *N. E. 2d,* at *p.* 533. Upon either view, Sherry must fail as to moneys paid her to abort the girl.

As we noted at the outset, Sherry asserts that the moneys should nonetheless be returned to her because the search, she claims, was illegal. Whether the search was valid, we cannot say on this record. A plenary hearing might well have brought the situation within *State v. Doyle,* 42 *N. J.* 334 (1964), as the dissenting opinion in the Appellate Division suggested. But we think the legality of the search is not crucial. The question is not whether the moneys may be used as evidence against Sherry in the criminal prosecution. Indeed the criminal prosecution is over. Rather, as we have said, the question is whether the courts must assist Sherry in regaining the money if it is the fruit of her criminal act. The Fourth Amendment does not bear upon that problem.

In this connection we refer to *One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania,* 380 *U. S.* 693, 85 *S. Ct.* 1246, 14 *L. Ed. 2d* 170 (1965). That case involved a statutory proceeding to forfeit an automobile because of its use in the transportation of untaxed liquor. The Court held that evidence illegally seized (the untaxed liquor) could not be received to prove the vehicle was illegally used and hence forfeited. It may be doubted that the case before us involves a "forfeiture" since the County seeks to hold the money on the thesis that it is the fruit of crime rather than on the thesis that it is money which belonged to Sherry but which she put to illegal use and hence should lose. On the other hand, something in the nature of a forfeiture may be involved in the sense that government refuses to return something it took from Sherry and does so upon the basis of her alleged

criminal activity (rather than upon the basis that someone else, *i.e.*, the victim of the crime, has a superior right to the money). So viewed, the case may be within the thesis of *One 1958 Plymouth Sedan*, but we need not decide that question since it is not presented by the record before us and may not arise at the trial.

In this regard, it should be stressed that *One 1958 Plymouth Sedan* did not hold that the automobile there involved could not be adjudged forfeited because it had been illegally seized. It did not say that whenever a search or seizure is illegal, the fruit or the forfeitable instrument of crime so seized must be returned to the culprit on that account. In more graphic terms, the Supreme Court did not hold that the loot of a bank holdup must, because it was illegally seized by the police, be handed back to the robber or his agent with a reasonable opportunity to make off with it. Rather the case implicitly recognized that the automobile could be adjudged forfeited notwithstanding the unlawfulness of its seizure, and held only that other things illegally seized, *i.e.*, the untaxed liquor, could not be used to prove the automobile was illegally used and hence forfeited. And so, here, if it should be found that the search was illegal, then, if *One 1958 Plymouth Sedan* does apply, the only consequence would be that other articles seized in the raid, *i.e.*, the abortion paraphernalia, could not be used to prove the moneys in question were paid for the abortion or proposed abortion. But the County is free to prove that claim through any admissible evidence, such as the testimony of the girl or her father or admissions of Sherry herself. From such testimony the trier of the facts may well be able to infer the moneys include the $2,500 allegedly paid with respect to the criminal event. Thus the question whether *One 1958 Plymouth Sedan* applies may not arise, either because, as we have already noted, the seizure of the abortion paraphernalia may be found to have been lawful or because that paraphernalia may not be needed to prove the money was the fruit of an abortion or a conspiracy to perform an abortion.

The judgments of the Appellate Division and of the trial court are reversed and the matter remanded to the trial court for plenary trial in harmony with this opinion.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.