**UNITED STATES of America,**
**Libellant,**

v.

**$125,882 IN U. S. CURRENCY.**

**No. 65 Ad. 704.**

United States District Court
S. D. New York.

May 8, 1968.

Rehearing Denied June 6, 1968.

Robert M. Morgenthau, U. S. Atty. for Southern District of New York, by Martin Paul Solomon, Asst. U. S. Atty., for libellant.

James G. Starkey, Brooklyn, N. Y., for claimant.

OPINION

TYLER, District Judge.

The United States has instituted this libel action pursuant to 26 U.S.C. § 7302 (1964) to forfeit $125,882 in United States currency, allegedly used in violation of the provisions of the internal revenue laws. The money was said to have been used by Emilio Pizzarello, the sole claimant here, and two others in their conduct of the business of accepting wagers. The illegality was alleged to stem from their failure to pay the

special gamblers' occupation tax imposed by 26 U.S.C. § 4411 (1964) or to register as required by 26 U.S.C. § 4412 (1964).

In the wake of two recent Supreme Court decisions, claimant has brought on a motion for summary judgment in this proceeding. Finding no material facts in dispute, I grant the motion, albeit with considerable reluctance, for reasons which will be set forth hereinafter.

Claimant is the proprietor of a stationery store-luncheonette in Mount Vernon, New York. He held the same position on April 15, 1965 when he was arrested in the back room of the store by federal agents. He was searched incident to the arrest, and cash in the total sum of $425 was removed from his person. Later that day, the agents caused a safe in the storage room of Pizzarello's store to be opened and they took therefrom $123,017. The remaining $2,440 was subsequently found by the agents elsewhere in the storage room.[1]

In due course an information was filed alleging that Pizzarello had failed to pay the special wagering taxes and register in accordance with 26 U.S.C. §§ 4401, 4411, 4412 (1964). At about the same time, this libel was filed, praying for the forfeiture of all the currency seized.

Notwithstanding an assertion by Pizzarello that compliance with the statutes would have violated his privilege against self-incrimination, the information resulted in a conviction which was affirmed by the Second Circuit. This affirmance was vacated by the Supreme Court on March 4, 1968 and the case remanded in light of Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968).

*Marchetti* held that the occupational tax and registration provisions of the Internal Revenue Code, 26 U.S.C. §§ 4411, 4412 "may not be employed to punish criminally those persons who have defended a failure to comply with their requirements with a proper assertion of the privilege against self-incrimination." Id. 390 U.S. at 42, 88 S.Ct. at 699. The Court reasoned that since wagering was "an area permeated with criminal statutes", the obligation to register with the federal government and pay the requisite occupational tax created a "real and appreciable" hazard of self-incrimination for gamblers.

*Grosso* extended the reasoning of *Marchetti* to emasculate the gamblers' excise tax, 26 U.S.C. § 4401 (1964) and the conspiracy law, 18 U.S.C. § 371 (1964), insofar as it may be applied to wagering tax violations. Notwithstanding Grosso's failure to raise his privilege against self-incrimination in opposition to two counts of his indictment, the Supreme Court reversed the conviction in its entirety. A remand on these counts was deemed unnecessary, since there was no evidence in the record of a waiver of the privilege. Without such a waiver, reversal was said to be "inevitable" in light of *Marchetti*.

The government contends that neither *Marchetti* nor *Grosso* compels a decision for the claimant in this action. It is argued that the Supreme Court did not hold the gambling tax statutes void, but rather unenforceable in obtaining criminal convictions against those who have asserted their privilege. The government emphasizes the Court's statement that the taxes themselves are constitutionally permissible. Grosso v. United States, supra, 390 U.S. at 69 n. 7, 88 S.Ct. 709. Since the gambling tax statutes remain on the books, and in this case the taxes were not paid, it is urged that property used in violation of the statutes may still be forfeited. In addition, the government notes that *Grosso* and *Marchetti*

---

[1]. In earlier proceedings before Judge Murphy of this court, it was held that these latter two seizures were unreasonable and that the evidence had to be excluded from Pizzarello's criminal trial. Subsequently, on a motion for summary judgment, it was ruled that the evidence was equally inadmissible in the instant forfeiture proceeding, but that forfeiture was not precluded by the fact that the money was illegally seized.

talked only of a proscription on criminal punishment and forfeiture proceedings are civil in nature.

These arguments were among those rebutted by the Seventh Circuit in its recent decision holding that *Marchetti* and *Grosso* require the remission of forfeitures based on violations of the wagering tax statutes. United States v. United States Coin and Currency, 393 F.2d 499, No. 15502, 7th Cir., April 9, 1968 (per curiam). In its initial ruling, the Seventh Circuit had upheld the forfeiture, 379 F.2d 946 (7th Cir. 1967), but that decision was vacated by the Supreme Court in light of *Marchetti* and *Grosso*. Piccioli v. United States, 390 U.S. 202, 88 S.Ct. 899, 19 L.Ed.2d 1034 (1968).

On remand, the Seventh Circuit reasoned that compliance with the wagering tax provisions to avoid forfeiture under section 7302 of the code subjects a person to precisely the same hazards of self-incrimination as those which threatened Marchetti and Grosso. The only difference between the two situations, therefore, is the penalty imposed on noncompliance. See United States v. Blank, 261 F.Supp. 180 (N.D.Ohio 1966). Yet a forfeiture of property was deemed by the court to be an impermissible penalty to impose on the assertion of the Fifth Amendment privilege. In reliance upon Boyd v. United States, 116 U.S. 616, 6 S. Ct. 524, 29 L.Ed. 746 (1886) and Garrity v. State of New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), the Seventh Circuit ruled that requiring a person to choose between incriminating himself by complying with the wagering tax statutes and having $8,000 of his money forfeited represents a constitutionally impermissible choice. Cf. Nieves v. United States, 280 F.Supp. 994 (S.D. N.Y.1968). *Boyd* is particularly relevant, since there the Supreme Court ruled that a claimant in a forfeiture proceeding could not be made to choose between producing a possibly incriminating document and forfeiting his property. See also Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967).

■ Although this court may not be bound by the Seventh Circuit's opinion, I find its reasoning persuasive and therefore follow it. While the Supreme Court affirmed Congress' power to lay and collect the wagering tax, the law seems unenforceable until such time as Congress provides that these special taxpayers and registrants cannot be prosecuted by either federal or state authorities on the basis of the information compelled by the taxing statute. See Marchetti v. United States, supra, 390 U.S. at 58–60, 88 S.Ct. 697.

■ The government raises a number of issues in its papers which were not expressly ruled upon by the Seventh Circuit. The first of these is whether *Marchetti* and *Grosso* can be applied to a forfeiture proceeding which was commenced prior to the Supreme Court's ruling that the tax statutes were unenforceable. In reliance upon Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), the government urges this court to rule that, at most, *Marchetti* and *Grosso* apply only to forfeiture proceedings commenced by seizure after January 29, 1968, the date of the gambling tax opinions.

Stovall, however, like Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966), and Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), related to the retrospective application of new constitutional rules of criminal procedure. *Marchetti* and *Grosso* affected a change in the substantive law. The rules they promulgated have no general applicability to all criminal proceedings. The decisions would seem to act in the nature of an abatement of pending wagering tax proceedings. See Application of Boyd, 189 F.Supp. 113 (M.D.Tenn. 1959), aff'd sub nom. Bomar v. Boyd, 281 F.2d 195 (6th Cir. 1960) (per curiam); cf. Hamm v. City of Rock Hill, 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300 (1964).

Furthermore, even if the retroactivity rules laid down in the line of cases extending from Linkletter v. Walker, supra to Stovall v. Denno, supra are to be applied equally to changes in substantive law, only the most restrictive measuring rod devised in *Stovall* would arguably preclude the applicability of *Marchetti* and *Grosso* to the case at bar. *Stovall,* however, seems clearly distinguishable. The decision in that case was apparently based on the Court's belief that prejudice resulted in a sufficiently small percentage of cases decided under the prior law to require the most restrictive application of retroactivity. On the other hand, the constitutional flaw of self-incrimination described in *Marchetti* and *Grosso* taints all gambling tax prosecutions.

In addition, both the Seventh Circuit in United States v. United States Coin and Currency, supra, and the Second Circuit in United States v. Fincher, 391 F. 2d 603 (2d Cir. 1968), have applied the principles of *Marchetti* and *Grosso* to cases which were on direct appeal. A fortiori, those principles should be applied to cases, such as this, which have not yet gone to trial. Compare Linkletter v. Walker, supra, with Johnson v. State of New Jersey, supra.

Finally, the government's argument that the agents seizing the currency alleged to be forfeitable were relying on the then existing state of the law as pronounced in United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 (1953) and Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475 (1955) is, to say the least, somewhat obscure. As noted above, this court has earlier ruled that the search and seizure of the bulk of the money was illegal under the Fourth Amendment. See, e. g., Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

The government next makes two arguments under the general heading of

standing. Both rest on the fact that the claimant has never alleged that he owns more than a portion of the $125,882. He asserts, however, that he is bailee as to the remainder, with a better right to it than the government.[2] It is the contention of the government that since the privilege against self-incrimination can, by definition, only be interposed to prevent the incrimination of the party who asserts it, and an individual is impermissibly penalized only with respect to the forfeiture of his own property, *Marchetti* and *Grosso* are inapplicable to the forfeiture of those sums which were not owned by Pizzarello at the time of the seizure. Cf. United States v. One 1963 Cadillac, 250 F.Supp. 183 (W.D. Mo.1966). Admittedly, United States v. United States Coin and Currency, supra sheds little light on this problem, since all the money there threatened with forfeiture was seized from the claimant's person.

Assuming that the currency which is the subject matter of this proceeding was owned by individuals who were themselves innocent of any violation of the gambling tax statutes, I agree with the government's contention. As to these persons, if there were any, there would be no penalty for their refusal to incriminate themselves, since there was no requirement that they register or pay any taxes. Their money could be forfeited in a proceeding consonant with the teachings of *Marchetti* and *Grosso*. See, e. g., United States v. Bride, 308 F.2d 470, 473–474 (9th Cir. 1962).

More likely, however, the bulk of the money under forfeiture was owned by persons who did not comply with the tax regulations because to do so would have involved self-incrimination. To require these persons to intervene in this proceeding merely to assert their privilege seems unnecessary in light of the Supreme Court's disposition in *Grosso*.

2. Pizzarello, when originally requested to open the safe, denied knowing the combination. He further asserted that the safe and its contents belonged to his sister who was in California, and that only she knew the combination. When the safe was opened however, it yielded up several legal documents in claimant Pizzarello's name.

There is no evidence that any of them has waived his privilege. Further, it would have been a futile gesture for any of them to have intervened in this case merely to assert the privilege while *Kahriger* and *Lewis* were still the law. See United States v. Manfredonia, 391 F.2d 229 (2d Cir. 1968). Thus, their money, like Pizzarello's, seems nonforfeitable.

■ Summarizing, section 7302 of the code is constitutional when applied to the forfeiture of property owned by those who were innocent of any violation of the gambling tax law, yet unconstitutional as applied to forfeitures of property owned by those who were guilty of some wrongdoing. While it is true that in many cases the unconstitutionality of some applications of a statutory rule will not destroy the validity of the remainder, the absurdity of the result herein does not permit a severance of the tainted portion.[3]

■ The test to be followed is whether Congress would have enacted the untainted branch of the law independently of that which is found to be beyond its power. United States v. Jackson, supra. I cannot believe that Congress would have enacted section 7302 if the only forfeitures mandated by its terms were those of innocent owners' property. Where, as here, the elimination of a segment of the statute substantially changes its reach and drastically alters its operation, the entire section must fall—at least as it relates to violations of the wagering tax law.[4]

The money having been determined to be nonforfeitable, the government has no further legal claim to the entire sum of $125,882. Moreover, this sum must be turned over to claimant Pizzarello, who has filed a sworn affidavit that he is owner of part and bailee of the rest of the currency found on his person, in the safe and adjacent to the safe. In the period of three years since the entire amount of currency was seized by federal agents, no one else has come forward to claim all or part of these sums; it seems futile, therefore, to expect that other claimants will come forward at this late date.[5]

Settle order accordingly.

### On Motion for Reargument

The government has moved for reargument of a motion for summary judgment which was granted in an opinion filed herein on May 8, 1968. In its papers, the government has called to this court's attention a reported decision of the Court of Appeals for the Sixth Circuit in United States v. One 1965 Buick, 392 F.2d 672 (decided April 17, 1968).

Although it is true that I was unaware of this decision when I wrote and filed my opinion of May 8, I conclude that this motion for reargument must be denied. Aside from the technical proposition that this court is not strictly bound by the ruling of the Court of Appeals for the Sixth Circuit, I am not persuaded by the rationale of that part of that Court's decision which is relevant here. See pp. 1–5 of slip opinion. In brief, my reasons for not being persuaded can be summarized as follows:

1. The Sixth Circuit apparently did not have called to its attention the arguments and questions which were considered by the Seventh Circuit in United States v. United States Coin and Cur-

---

3. The Internal Revenue Code includes a section pertaining to separability. 26 U.S.C. § 7852(a) (1964). The ultimate decision, however, rarely turns on the presence or absence of such an expression of legislative intent. United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 1212 n. 7, 20 L.Ed.2d 138 (1968).

4. As applied to property used in violation of those provisions of the code which do not compel self-incrimination, section 7302 would appear to be constitutional.

See, e. g., United States v. Hall, 364 F. 2d 501 (4th Cir. 1966).

5. In One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965), the Supreme Court drew a dichotomy between "derivative contraband" and "per se contraband". United States currency falls within the former classification. Thus, unlike heroin, it may be returned on a showing such as the one described hereinabove.

rency, 393 F.2d 499 (decided April 9, 1968) and by this court in its aforementioned opinion in this case—and found by both courts to be determinative.

2. As should be clear at least by implication from my opinion herein, I recognize that the Supreme Court in *Marchetti* and *Grosso* expressly refrained from ruling that invocation of the constitutional privilege frees the invoker from liability for the occupational tax— or from income tax liability. Such recognition, however, does not change the result reached here in this case. Put differently, I squarely disagree with the apparent view of the Sixth Circuit that it follows from such recognition that the government's claim in a forfeiture case under the circumstances here presented must be upheld.

The other points raised by the government on this motion have been covered by the May 8 opinion and thus need no further comment here.

It is so ordered.