OFFICE OF FINANCE OF BALTIMORE COUNTY,
MARYLAND *v.* GERALD PREVITI

[No. 89, September Term, 1982.]

*Decided August 12, 1983.*

The cause was argued before SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ., and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), specially assigned.

*Michael J. Moran, Assistant County Attorney,* with whom was *Leonard S. Jacobson, County Attorney,* on the brief, for appellant.

*George A. Breschi,* with whom was *Robert A. Breschi* on the brief, for appellee.

RODOWSKY, J., delivered the opinion of the Court. ELDRIDGE and DAVIDSON, JJ., dissent. ELDRIDGE, J., filed a dissenting opinion at page 519 *infra,* in which DAVIDSON, J., concurs in Part III.

Md. Code (1957, 1982 Repl. Vol.), Art. 27, § 264 deals with the forfeiture of cash seized in connection with an arrest for gambling. In this case we shall hold that the instances in which forfeitures pursuant to § 264 may arise are not limited to situations where the claimant of the cash is ultimately convicted of the gambling offense for which the claimant was arrested.

On April 18, 1980, officers from the vice section of the Baltimore County Police Department, acting under search warrants, conducted a raid at a cocktail lounge on Pulaski

Highway. The raid culminated an undercover investigation of suspected gambling activities at the premises. Gerald Previti (Previti), the appellee, was arrested in the raid and charged with violating Art. 27, § 240 by accepting wagers on sporting events. Among the articles seized from Previti were $3,336 in currency, $5.50 in nickles, a major league baseball schedule and two "sport sheets." A stet was entered to the criminal charge against Previti on August 28, 1980.[1] After notice had been given by Baltimore County to Previti of the requirements of § 264 "for making claim for the return of seized moneys" (§ 264 (d) (4)), Previti, on June 27, 1981, wrote to an Assistant County Solicitor requesting its return.[2] This letter was forwarded to the District Court of Maryland for Baltimore County where it was treated as an original pleading, and a civil case was opened on the docket. In a show cause order dated July 23, 1981 the District Court named the Baltimore County Office of Finance (the County) as defendant.[3] After hearing conflicting evidence, the District Court held that it was "going to order the forfeiture of $3,341.50." Judgment was entered in favor of the County, as defendant.

---

1. At the trial of the instant action Previti explained that, at the time of his April 18, 1980 arrest, he was awaiting trial on unrelated federal charges, on which he was subsequently convicted. The stet was entered because the State did not wish to incur the expense of transporting Previti to Baltimore County, Maryland for trial from the federal correctional facility where Previti was serving the federal sentence.

2. The letter reads:

Mr. Michael Moran
Assistant County Solicitor:

    In regards to your letter advising me of my rights for a hearing for my money which was seized and I do contend that the judgment was entered in my favor and contend that the money is not contraband of law and therefore should be returned to me and do request a hearing as soon as possible.

                        Thank you for advising me of my rights.

                        Yours truly,

                        GERALD PREVITI [Signature]
                        6 Fernsell Court
                        Apt. 1-C
                        Balto. Md 21237

3. "[J]urisdiction over the subject matter of a case is not ousted by irreg-

Previti appealed to the Circuit Court for Baltimore County which reversed. We then granted the County's petition for certiorari which raised this single question:

> Does the absence of a conviction of a defendant charged with violations of the gambling laws preclude the Court from ordering money seized from the Defendant forfeit to the County, after the Court conducts a hearing and finds that the money is contraband pursuant to [§ 264 (d)]?

There was no conditional cross-petition.

The circuit court's decision was made on June 30, 1982. It relied almost entirely on certain language appearing in an opinion of the Court of Special Appeals which had been filed on June 3, 1982 in *Bozman v. Office of Finance of Baltimore County,* 52 Md. App. 1, 445 A.2d 1073 (1982), *aff'd,* 296 Md. 492, 463 A.2d 832 (1983). That case arose under Art. 27, § 297, dealing with forfeitures in controlled dangerous substances cases. Bozman had argued that some kind of final disposition of related criminal charges was a condition precedent to a forfeiture proceeding instituted under § 297 by the seizing authority. We affirmed the intermediate appellate court's rejection of that contention. However, in its *Bozman* opinion, the Court of Special Appeals commented on § 264, the

---

ularities in the proceedings ... or by insufficiencies in the pleading." Steinpreis v. Leet, 240 Md. 212, 216, 213 A.2d 555, 557 (1965). *See also* Travelers v. Nationwide, 244 Md. 401, 410, 224 A.2d 285, 290 (1966); Fooks' Executors v. Ghingher, 172 Md. 612, 624, 192 A. 782, 787, *cert. denied,* 302 U.S. 726, 58 S. Ct. 47, 82 L. Ed. 561 (1937). This *is particularly true in the* District Court of Maryland where the pleadings and proceedings are informal in nature. *See Travelers,* 244 Md. at 406, 224 A.2d at 288; MDR 300(a). Any irregularity involved in the filing of the petition was cured or waived when Previti, represented by counsel, appeared in court and where Previti's claim as stated in the letter was presented and argued without objection by the defendant on grounds of irregularity.

Nield v. Nield, 126 W. Va. 430, 433, 28 S.E.2d 825, 827 (1944), *cited in* the dissent, states that the lack of an adequate petition, to which the petitioner's adversary objected in that case, "[did] not relate to the jurisdiction of the court, but to the manner in which jurisdiction was attempted to be exercised."

gambling forfeiture statute, in the following manner (52 Md. App. at 9, 445 A.2d at 1077):

> [Section 264] allows forfeiture of monies seized as a result of a gambling arrest. The statute mandates that forfeiture shall be commenced within 90 days of "conviction." The appellant adroitly likens section 264 to section 297, and, while not specifically suggesting that we read the statutes to be in *pari materia,* very gently prods us in that direction.
>
> We think that the Legislature meant to draw, and did draw a sharp distinction between forfeitures in gambling cases and forfeitures in controlled dangerous substances matters. The requirement of a "conviction" in a gambling case is a recognization by the General Assembly that, while gambling is unlawful, it is not such a heinous offense as to dictate forfeiture absent conviction.

On Previti's appeal, the circuit court concluded that "in view of the holding in the *Bozman* case, *supra,* this Court must find that the District Court erred in ordering the forfeiture of the $3,341.50." We do not agree. Forfeitures under § 264 are not exclusively limited to situations in which a criminal conviction against the claimant has been obtained on the gambling charges. The plain language of § 264 produces the forfeiture result in this case.

Under § 264 (a),[4] the money seized from Previti is "deemed prima facie to be contraband of law. . . . All rights,

---

4. Section 264 (a) reads as follows:

(a) *Deemed contraband.* — Whenever any money, currency, or cash is seized or captured by any police officer in this State in connection with any arrest for the playing or operation of any bookmaking, betting and wagering on horses or athletic events, or any lottery, game, table, or gaming device unlawful under the provisions of this article, all such money, currency, or cash shall be deemed prima facie to be contraband of law as a gambling device or as a part of a gambling operation. All rights, title, and interest in and to such money, currency, or cash seized by the police of the local government shall immediately vest in and to the local governments of the county, municipality, or Baltimore City, or if seized

title, and interest in and to" the money "immediately vest[ed] in and to" the County. Subsection (a) further provides that "no such money . . . shall be returned to any person claiming the same . . . except as provided in this section."

The statute then addresses factual variations which can occur following the initial seizure. "If the trial or other ultimate disposition" of the charges results in "a record of conviction," the financial officer of the seizing governmental body "shall within 90 days from the date of the record of the entry of such conviction" apply to a court for an order declaring the money forfeited. § 264 (c).[5] Subsection (d) treats situations where the criminal charge results in "acquittal, dismissal, a stet, a nolle prosequi, or probation [before judgment]."[6] Within one year from that type of dis-

by State authorities, to the State, and no such money, currency, or cash shall be returned to any person claiming the same, or to any other person, except as provided in this section. The Baltimore City police department is not a State authority for the purposes of this section.

5. The text of the relevant portion of § 264 (c) reads:

(c) *Forfeiture upon conviction.* — If the trial or other ultimate disposition of such charge or charges, indictment or indictments, results in a record of conviction being entered against the person or persons so arrested, in connection with which the money, currency, or cash may have been so seized or captured, the State Treasurer, the county treasurer of the county or the director of finance in Baltimore City, shall within 90 days from the date of the record of the entry of such conviction, unless the case is appealed to an appellate court, make application to the District Court or circuit court of the county or to the District Court of Baltimore City or a law court of the Supreme Bench of Baltimore City, for an order declaring and ordering that such money, currency or cash in the custody of the State Treasurer, director of finance or county treasurer shall be forfeited to the sole use and gain of the State, county or city. The court to which any such application has been directed shall establish to its satisfaction that there is no pending and undetermined suit or proceeding which has been filed in any court of competent jurisdiction, against the director of finance or treasurer, seeking a return or recovery of the money, currency or cash so held in custody, before the court shall proceed so to order a forfeiture of such money, currency or cash to the State, County or Baltimore City.

6. The full text of § 264 (d) reads:

(d) *Application for return of seized money.* — (1) Upon the ultimate disposition of such charge or charges, indictment or indictments, resulting in acquittal, dismissal, a stet, a nolle prosequi, or probation under the provisions of § 641, any person

position, a person who claims that the seized money is not contraband may apply to a court for a determination that the money "is the property of the claimant and for an order that it be returned." § 264 (d) (1). That is what Previti did in this case. If the petition filed by the claimant "is finally decided against the claimant, the seized moneys . . . shall be forfeited to the custodian without further judicial action." § 264 (d) (3). That is what the District Court did in this case. It was authorized by the statute. Subsection (c), dealing with proceedings for forfeiture initiated by the seizing government after a conviction, does not limit the operation of subsection (d). The circuit court erred in requiring that there first be a criminal conviction for a forfeiture to result in this case.

Previti also argues that the 90 day time limit under § 264 (c) for institution of a forfeiture action applies to this case, so that the County has lost any right to retain the seized money. This argument is simply a corollary of the position which we have rejected above. It incorrectly assumes that a criminal conviction is always a condition precedent to any forfeiture under § 264.

---

claiming that all or any of the seized money, currency, or cash is not contraband of law under (a) and should be returned to the claimant, within one year after the date the judgment or order was entered or the action was taken which constituted the ultimate disposition, may make application on giving ten days' prior written notice to the State Treasurer, custodian, county treasurer, or director of finance, to the appropriate court for a determination that the money, currency, or cash is the property of the claimant and for an order that it be returned.

(2) In a proceeding upon that application an acquittal, a dismissal, or a nolle prosequi with respect to the gambling charges or indictments involved in the seizure of the money, cash, or currency is prima facie evidence that it is not contraband. A conviction, plea of guilty or of nolo contendere, and probation under the provisions of § 641 is prima facie evidence that it is contraband. No presumption in the proceeding shall attach to an entry of stet.

(3) If a petition is not timely and properly filed, or if it is finally decided against the claimant, the seized moneys not disposed of shall be forfeited to the custodian without further judicial action.

(4) Timely notice must be given by certified mail or other appropriate means to any known claimants, at their last known address, of the requirements of this section for making claim for the return of seized moneys, or the seized moneys shall not be forfeited as provided by paragraph (3) of this section.

Taking a different tack, Previti contends that, because a stet is not a disposition of guilty, a stet should be equated with a disposition of not guilty, especially where, as here, the County has failed to seek forfeiture. Under § 264 (d) (2), an acquittal is prima facie evidence that the seized money is not contraband in a hearing on a claimant's application for return of the money. It follows, says Previti, that the County failed to meet the "severe" burden of proof needed to overcome the presumption. But there was no presumption one way or the other in this case. Section 264 (d) (2) states that "[n]o presumption in the proceeding shall attach to an entry of stet."

> *Judgment of the Circuit Court for*
> *Baltimore County reversed.*
> *Case remanded to that Court for the*
> *entry of a judgment affirming the*
> *judgment of the District Court of*
> *Maryland for Baltimore County.*
> *Costs to be paid by Gerald Previti.*

*Eldridge, J., dissenting:*

Because I conclude that the district court should not have decided the merits of this controversy, I dissent from the majority's decision. I would either dismiss the writ of certiorari as improvidently granted or vacate the judgments of the courts below and remand the case with directions that it be dismissed. Alternatively, I would affirm the circuit court's reversal of the District Court forfeiture order because the District Court order was premised on a patently incorrect application of the exclusionary rule.

On April 18, 1980, Baltimore County police officers executed a search warrant at a cocktail lounge on Pulaski Highway. Gerald Previti was arrested and charged with violating Maryland Code (1957, 1982 Repl. Vol.), Art. 27, § 240, by accepting wagers on sporting events. Pursuant to the search warrant, the police seized money in the amount of $3,341.50 from Previti's person. On August 23, 1980, the charge against Previti was stetted.

On June 27, 1981, Previti wrote a letter to the Assistant County Solicitor for Baltimore County, stating that the seized money was not contraband and should be returned to him. The County Attorney sent this letter along with a cover letter that read, "Please set the attached matter in for a hearing on the return of seized money per your usual procedure," to the District Court of Maryland, sitting in Baltimore County. Previti's letter was treated as an original pleading, and the case was docketed. A show cause order was issued on July 23, 1981, naming Previti as plaintiff and the County as defendant.

Trial was held on October 30, 1981. During the trial, the trial judge ruled that the search warrant leading to Previti's arrest was invalid. Nevertheless, the judge concluded that he did not have to exclude evidence seized incident to the execution of the search warrant because the "exclusionary rule is a rule which is just set for criminal law." Based on the evidence seized pursuant to the search warrant, the trial judge held that the seized money was directly associated with gambling and was contraband. He ordered the money forfeited to Baltimore County.

Previti appealed the forfeiture order to the Circuit Court for Baltimore County. The circuit court reversed the judgment of the District Court after concluding that no presumption arises from a stet in a forfeiture proceeding and that a conviction is necessary for a forfeiture under Code (1957, 1982 Repl. Vol.), Art. 27, § 264. We granted the County's petition for a writ of certiorari.

## I.

Maryland District Rule [1] 100 states that "[a]n action shall be commenced by filing with the court a statement of claim." This rule is supplemented by, *inter alia,* M.D.R. 103 h which provides in part that "[i]n commencing an action, the plaintiff shall furnish the clerk with one copy of his original pleading for each defendant." [2] M.D.R. 301 a prescribes the requisite content of a statement of claim as follows:

---

1. Hereafter the Maryland District Rules will be referred to as "M.D.R."
2. Original pleading is defined in M.D.R. 5 as follows:

"The plaintiff's statement of claim shall be sufficient if it contains the following:

(i) a concise statement of facts sufficient to inform the defendant of the plaintiff's claim including, in tort actions, the date and place of the alleged tort.

(ii) a demand for judgment for damages or other relief;

(iii) the name and location of the court; the names and addresses of all parties; the address and telephone number of the plaintiff's attorney, if any, and if none, the telephone number, if any, of the plaintiff; the signature of the plaintiff or his attorney; and any verification required by law or rule."

Although M.D.R. 300 a provides that the technical requirements of pleading shall not apply in the District Court, the same rule goes on to list "the plaintiff's statement of claim" as one of the mandatory pleadings.[3]

Moreover, the filing by a plaintiff of an original pleading in court, such as a statement of claim in the District Court or a declaration in a circuit court action at law, is necessary to give the court jurisdiction over the subject matter. *Montgomery Co. v. Ian Corp.,* 282 Md. 459, 467, 385 A.2d 80 (1978) (the circuit court "acquires jurisdiction over the subject matter by the filing of a declaration at law . . . or a bill

---

"n. *Original Pleading.*

'Original pleading' with respect to any defendant means the first pleading filed in an action against such defendant, including a third (or subsequent) party claim under M.D.R. 315 (Third Party Practice)."

**3.** M.D.R. 300 a states:

"a. *Pleadings Allowed.*

Technical requirements of pleading shall not apply. Pleadings shall be limited to the plaintiff's statement of claim, the defendant's notice of intention to defend, counterclaims, cross-claims, third-party claims, notices to defend against third-party claims, and motions."

or petition in equity"); *Bertonazzi v. Hillman, Adm'x,* 241 Md. 361, 365-366, 216 A.2d 723 (1966). Being jurisdictional, the matter is not subject to waiver by the "parties" and should be addressed by this Court even though not raised by the "parties." *Duffy v. Conaway,* 295 Md. 242, 254-255 n. 8, 455 A.2d 955 (1983), and cases there cited.

In this case, Previti sent nothing to a court and demanded nothing of a court. Instead, by *letter* to a public *corporation,* he sought satisfaction from the latter. Baltimore County was Previti's adversary, not his agent, in a dispute which had not reached the courts. Moreover, under Art. 27, § 264 (c), Baltimore County had no right to institute judicial proceedings in the matter, as there had been no criminal conviction. Nevertheless, the majority treats the County's action, forwarding to the court the letter from Previti to the County, as the filing of a statement of claim by Previti sufficient to confer jurisdiction upon the court. This transcends any reasonable limits upon informality in District Court pleading.

The holding of the West Virginia Supreme Court in *Nield v. Nield,* 126 W. Va. 430, 28 S.E.2d 825 (1944), is quite pertinent. In that case, a former wife receiving child support under a divorce decree sent a notice to her former husband, setting forth her intention of applying for an increase in child support. The former husband apparently forwarded this notice to the court, along with a paper which he designated as a demurrer to the notice, although he did not challenge the sufficiency of the notice as an initial pleading. In reversing an order for an increase in child support, the Supreme Court of West Virginia stated (126 W.Va. at 432, emphasis added):

> "The notice served on appellant states a fact and a conclusion: That forty dollars a month was being paid for the children's support and that the amount was inadequate. *The notice was not addressed to the court and contained no prayer for relief.* The liberal rule that substance of a pleading filed in a suit rather than its form determines its effect has

been accepted and applied in this jurisdiction . . . . Nevertheless the notice served on appellant cannot be considered and treated as a petition or any kind of pleading." [4]

*Sears Roebuck and Company v. Glenwal Company,* 325 F.Supp. 86 (S.D.N.Y. 1970), *summarily aff'd,* 442 F.2d 1350 (2d Cir. 1971), is also instructive in the instant case. That case involved a contract dispute between Glenwal and Sears. During the dispute, Glenwal served a demand on Sears for arbitration pursuant to the contract. Sears filed a petition in the Supreme Court of New York seeking a stay of the proposed arbitration. Glenwal removed the proceeding to the United States District Court for the Southern District of New York. Sears, however, moved for a remand, alleging that Glenwal was the plaintiff and therefore was not entitled to remove the case. The court denied Sears' motion for a remand because of the nature of Glenwal's notice, saying (325 F.Supp. at 88):

> "Glenwal, by serving its demand for arbitration upon Sears — in effect, a notice that Sears comply with its agreement to submit their dispute to arbitration — did not thereby initiate, or become a plaintiff or petitioner to, an arbitration proceeding. To constitute a proceeding, the intervention of a court is required."

*See also Martin v. City of Columbus,* 101 Ohio St. 1, 5, 127 N.E. 411 (1920) ("A party plaintiff is the one that initiates the action or proceeding by making its application or filing its petition in a court of competent jurisdiction").

In my opinion, the District Court acquired no jurisdiction over the subject matter of this controversy.

---

4. The notice in *Nield* was filed in the existing divorce action over which the trial court had statutory jurisdiction (126 W.Va. at 432-433), and presumably for this reason the West Virginia Supreme Court observed that the "question here involved does not relate to the jurisdiction of the court, but to the manner in which jurisdiction was attempted to be exercised." (*Id.* at 433). The court treated the issue as a matter to be dealt with by the Supreme Court sua sponte even though not raised by the parties.

## II.

Even if the absence of a statement of claim by a plaintiff were not jurisdictional, and if the District Court technically had subject matter jurisdiction, the court's exercise of such jurisdiction contravened established legislative policy. As such, it should not be sanctioned by this Court regardless of the "plaintiff's" lack of objection. *See Joseph Munson Co. v. Sec. Of State,* 294 Md. 160, 169, 448 A.2d 935 (1982) ("certain fundamental questions of policy relating to the trial court's exercise of jurisdiction" will be sua sponte addressed by us even though not raised by a party); *Sec., Dep't of Human Res. v. Wilson,* 286 Md. 639, 644-645, 409 A.2d 713 (1979).

As previously mentioned under Art. 27, § 264 (c), Baltimore County was not entitled to institute forfeiture proceedings unless the charges in the criminal case resulted in "a record of conviction being entered against the person or persons so arrested, in connection with which the money, currency or cash may have been so seized . . . ." *See Director of Fin. v. Cole,* 48 Md.App. 633, 428 A.2d 1227 (1981). The legislative scheme of § 264 bars a trial court from undertaking to decide a forfeiture case instituted by the seizing jurisdiction without a prior conviction.

The majority, by allowing Baltimore County in effect to instigate a forfeiture action as was done in the present case, has ignored the legislative policy embodied in Art. 27, § 264 (c). Furthermore today's decision shows seizing jurisdictions how this legislative policy may be easily circumvented in the future.

Instead of reaching the merits, I would either order that the judgments of the Circuit Court for Baltimore County and the District Court be vacated and that the purported action be dismissed, or dismiss the writ of certiorari as improvidently granted.

### III.

If it were appropriate to reach the merits of this controversy, I would affirm the circuit court's reversal of the District Court's forfeiture order, although on different grounds than those relied upon by the circuit court.

In the District Court, counsel for Previti argued that the search warrant in this case was invalid, that the warrant was therefore inadmissible, and that the evidence seized as a result of the search warrant should be excluded. After hearing testimony, the trial judge held that the warrant was invalid. Although the judge refused to allow the warrant in as evidence, he permitted the detectives to testify as to the seized items because "the exclusionary rule does not apply to civil proceedings." Previti's counsel specifically objected to this ruling.

In *Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965), the Supreme Court held that the exclusionary rule was applicable to civil forfeiture proceedings. That case involved state proceedings to forfeit an automobile because it allegedly had been used to transport illegal liquor. The State sought to prove the illegal use through evidence taken from the car during an unconstitutional search.[5] In reversing the forfeiture order, the Court distinguished between derivative contraband and contraband per se, the possession of which, without more, constitutes a crime, 380 U.S. at 699. The Court noted that "the return of the automobile to the owner would not subject him to any possible criminal penalties for possession or frustrate any public policy concerning automobiles, as automobiles." *Ibid.*

In the case at bar, the property seized was money. Money is derivative contraband: its possession, without more, is lawful. To prove that forfeiture was warranted, the only

---

**5.** The State had conceded that it "could not establish an illegal use without using the evidence resulting from the search which [wa]s challenged as having been in violation of the Constitution." Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 699, 85 S. Ct. 1246, 14 L.Ed.2d 170 (1965).

evidence that the County introduced was obtained by virtue of the unconstitutional search. Under *Plymouth Sedan,* that evidence should have been suppressed. Finally, the return of the money would not frustrate public policy. According to Professor LaFave:

> "the fact remains, which has been deemed determinative by most courts,[13] that gambling money is more like the auto in *Plymouth Sedan* than the narcotics in *[United States v.] Jeffers* [342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951)] because it is 'not intrinsically illegal in character.' In support of applying the exclusionary rule where the forfeiture concerns such items as gambling moneys, it could be argued that the ability to deprive gamblers of their ill-gotten gains notwithstanding the unconstitutional means used to find the money or determine its character would actually encourage violations of the Fourth Amendment.
>
> "[13] Silbert v. United States, 289 F.Supp. 318 (D.Md. 1968); United States v. $125,882 in U.S. Currency, 286 F.Supp. 643 (S.D.N.Y. 1968); People v. Zimmerman, 44 Ill.App.3d 601, 358 N.E.2d 715 (1976); People v. Mota, 27 Ill.App.3d 982, 327 N.E.2d 419 (1975); State v. Sherry, 46 N.J. 172, 215 A.2d 536 (1965); Reyes v. Rosetti, 47 Misc.2d 517, 262 N.Y.S.2d 845 (1965)."

1 W. LaFave, *Search And Seizure: A Treatise on the Fourth Amendment,* § 1.5 at 86 (1978) (some footnotes omitted).

Although Previti on numerous occasions below challenged the court's ruling that the exclusionary rule does not apply to a civil forfeiture proceeding, he did not file a cross petition for a writ of certiorari raising this issue. Moreover, the issue was not directly raised in Baltimore County's petition for a writ of certiorari, although the question presented in that petition is premised upon the trial court's finding "that the money is contraband," and this finding was dependent upon

the trial court's holding that the exclusionary rule was inapplicable.

Under Rule 813 a, this Court "ordinarily" will not decide questions not encompassed in the petition or a cross petition for certiorari. Rule 813 a is analogous to Rule 885, under which this Court's scope of review is "ordinarily" limited to questions raised and decided in the trial court. As both rules employ the term "ordinarily," they both permit exceptions. Consequently, we have on a few occasions decided cases on issues other than those raised in the certiorari petition or a cross petition. *See, e.g., Ayre v. State,* 291 Md. 155, 161, 433 A.2d 1150 (1981); *Scott v. State,* 289 Md. 647, 651, 426 A.2d 923 (1981); *Hillard v. State,* 286 Md. 145, 406 A.2d 415 (1979). *See also State v. Raithel,* 285 Md. 478, 483-484, 404 A.2d 264 (1979). Similarly, we have reviewed cases on issues not raised in the trial court. *See, e.g., Scott v. State, supra; Squire v. State,* 280 Md. 132, 368 A.2d 1019 (1977); *Bartholomey v. State,* 260 Md. 504, 273 A.2d 164 (1971) *vacated on other grounds,* 408 U.S. 938, 92 S.Ct. 2870, 33 L.Ed.2d 759 (1972); *Martin G. Imbach, Inc. v. Deegan,* 208 Md. 115, 117 A.2d 864 (1955).

In the trial court, Previti's counsel raised the applicability of the exclusionary rule at least fifteen times by interposing objections. Moreover, the applicability of the exclusionary rule to forfeiture proceedings is a clear-cut issue of law. Obviously, as a matter of law, the County is not entitled to retain the money based on the evidence presented. Under the circumstances of this case, I would exercise our discretion to excuse Previti's failure to raise the exclusionary rule issue in a cross petition, and I would affirm the circuit court decision ordering the return of Previti's money because the money was seized pursuant to an invalid search warrant.

Judge Davidson has authorized me to state that she concurs in Part III of this dissent and would affirm the Circuit Court's order for the reasons set forth in Part III.