Sidney H. Asch, J.
This is an action instituted by the plaintiff to replevin $502 in United States currency, which is being held by the Police Property Clerk of the City of New York. It squarely presents the significant problem of whether to apply the doctrine of Mapp v. Ohio (367 U. S. 643 [1961]) in a Civil Court action.
The plaintiff, Leonida Reyes, was arrested on February 1, 1964, in her apartment, for the alleged violation of sections 974, 974-a and 975 of the Penal Law, involving the laws against gambling. The New York City Police Department, in the person of a police officer, undeniably took the currency from plaintiff’s premises and turned it over to the Property Clerk. In the Criminal Court, prosecution upon a motion to suppress the evidence, the search warrant, which the policeman had obtained, was controverted, and the evidence was suppressed. The People were unable to present further evidence and there followed an acquittal in that court on the criminal charges.
*518 A demand was made for the return of the currency in the possession of the Police Property Clerk. Upon the subsequent refusal, plaintiff commenced the present action grounded in replevin. At the trial, the plaintiff testified as to the manner of the search and seizure, which was improper, since there was no showing of probable cause, that she had saved the currency in question from her household money, that the $502 had been taken from her handbag and retained by the police officer.
At the close of the testimony by plaintiff, she rested. The defendant sought to introduce the testimony of the police officer. It was essentially the same as that of plaintiff with respect to the search and seizure, except that the officer stated that the currency was found by him in a cardboard box on the kitchen table, together with certain policy slips. Plaintiff objected to the offer of proof by the police officer on the ground that it was based upon an unconstitutional search and seizure, relying upon the case of Mapp v. Ohio (supra). This court reserved decision on that objection, and at this point, sustains the objection and strikes the testimony of the police officer.
Upon the testimony of the plaintiff, uncontroverted, the court is required to hold that the money in possession of the Property Clerk was removed from her apartment, that she had a property right in the money and that she lawfully obtained possession of the money. She has met these preliminary requirements of the Administrative Code (§ 435-4.0). Plaintiff has urged that this provision of the Administrative Code in placing such a burden on the plaintiff is unconstitutional, but since she has met that challenge it is unnecessary to consider this argument. For this reason, the admissibility of the policeman’s testimony is critical.
Since Mapp v. Ohio (supra), the rule enunciated by the Supreme Court of the United States has been that evidence obtained through an illegal search and seizure is inadmissible in a State criminal case. The extent to which this rule is applicable in a civil case is still unsettled in New York. In a recent decision of the Court of Appeals, rendered in the case of Sackler v. Sackler (15 N Y 2d 40), the exclusionary rule of Mapp was deemed not to apply to private searches. In that case, proof as to a wife’s adultery was received in evidence although it was obtained by an illegal forcible entry into the wife’s home by the husband and several private investigators employed by him. There were two strong dissents. In one of them, Bergait, J., argued (pp. 47-48): “ We ought not hang on tenaciously to the remnant of an old rule out of sentiment or by reason of inertia. If we continue to sanction a duality of this kind in the practice it will develop into an ultimate procedural incongruity *519 which in. the end will have to be adjusted. We ought to deal with it now by making the change in the direction of consistency while the criminal practice is adapting itself to Mapp. The change in fundamental viewpoint and the approach to wrongfully obtained evidence have made our rule of admissibility in private cases inconsistent and discriminatory.”
Other cases in the State have expressed a point of view similar to that anticipated by these dissents. (Chambers v. Rosetti, 40 Misc 2d 620; Agrisani v. Rosetti, 36 Misc 2d 523; Rocco v Travelers Ins. Co., 38 Misc 2d 311; see, also, Lebel v. Swinciki, 354 Mich. 427.) In the instant case, the search and seizure was made for the purpose of criminal prosecution. It cannot be argued, even by the most staunch supporters of the Sackler decision that its applicability extended to anything more than private searches. Whether to extend the rationale of Mapp v. Ohio (367 U. S. 643, supra) to the case now presented, in the Civil Court, raises important questions of public policy. Crime in the streets projects a terrifying spectre in 20th century America. The President of these United States, in his message to Congress of March 8, 1965, stated: “ Crime is in America’s midst. Since 1940 the crime rate in this country has doubled. It has increased five times as fast as our population since 1958.”
It may well be that this fear is disproportionate to the realistic situation. It is possible that the figures, analyzed in depth, show a more encouraging (or at least less discouraging) picture. Furthermore, it may well be that the vast panoply of officialdom, the Judges, the legislators, the prosecutors, the police, all those engaged in the business of law and order, are not going soft on crime.
Why then, is there the hue and cry for stricter enforcement of the law? Obviously, the threat of an overwhelming crime wave is not a sufficient explanation. One may suspect that the emphasis on law enforcement may be fed by a sense of guilt with respect to one’s own evasion of avoidance of legal structures. And we are also becoming increasingly insecure in a world in which old conventions, moral codes and rules of law no longer seem to work as well as they did in those halcyon days of bucolic peace and serenity of our fathers (or did they ever exist?). It is interesting to note that the call for stricter law enforcement seems to be related to the same psychological well-streams supplying the attacks on civil liberties which spring up from time to time. What is obviously required is more study of this phenomenon by social historians, psychologists and sociologists, as well as by lawyers,
*520 Gunnar Myrdahl, the Nobel prize winner, in his “ The American Dilemma ’ ’ 'has pointed out there, that there have always been two ambivalent strains in American life. On one hand, there has been an emphasis on enactment of more and more laws. On the other, there has been an impatience with the restraint imposed by the strictures of the law. There has often been a willingness to resort to violent action, to self-help, to a forceful rejection of the more plodding, more devious, processes of the law. This dichotomy has plagued law-enforcement officials. Judge Learned Hand speaking of a roundup of vagrants and petty criminals by Grover Whalen when he was Police Commissioner, amid the general approval of such actions by the community leaders, pointed out that these worthy burghers would bridle at the thought that someone should be punished at official whim without evidence of guilt. Said Judge Hand: “ They are loyal to our institutions in the abstract but they do not mean to take them too seriously in application. ’ ’
And just recently, Police Commissioner Murphy, before he resigned, complained that what the Supreme Court is doing ‘1 is akin to requiring one boxer to fight by the Marquis of Queensbury rules while permitting the other to butt, gouge and bite.” One cannot help but be sympathetic with the Commissioner’s objective. Yet, the implications raise serious questions. Is he saying he would like the police not to have to obey the law in the process of enforcing it? The police, he believes, should have the same right to use criminal methods — “to butt, gouge and bite ” — as the criminals from whom they seek to protect society. It does not take great reflection to understand that by permitting the police to use criminal tactics we do not decrease the problem of crime in America but what we do is increase it. No segment of the population, even in Los Angeles, or the Chief of Police, can be permitted to flout the law.
If the history of the 20th century has taught us anything, it should have hammered home the lesson that one does not create a more law-abiding community by encouraging those in authority to feel that they are above the law. A distinguishing characteristic of a civilized community is the ability to bear the frustrations of a complex society in a rational way without giving way to the temptation to strike back blindly outside the law. The threat from the lawless, those who threaten the security of our streets and the safety of our homes is not diminished by encouraging the law officer to become lawless.
The counterpoint of majority rule and minority rights is the essential demerit in the symphony of our democracy. Appar *521 ently, the recently inducted Police Commissioner, Vincent E. Broderick, understands this aspect of the American system. At the time he was sworn in, he said: “ I pledge that while I am Police Commissioner the Police Department will strive toward * * * the ultimate end that every law-abiding citizen * * # and this includes every member of every minority group, and every policeman as well * * * may be free to enjoy the liberty which such a climate will make possible.”
Judge Irving E. Kaufman, of the United States Court of Appeals, Second Circuit, has stated the pragmatic nature of the balance between majority rule and minority rights, in the contest of the conflict between individual rights and the maintenance of public security. ‘ ‘ Do we follow the lesson of history, which according to Mr. Justice Brennan proves that tolerance of shortcut methods in law enforcement impairs its enduring effectiveness ? Or, on the other hand, do we heed Chief Judge Lumbard’s warning that before we impose additional restrictions on the police we should display great caution, lest in the desire to protect individual rights the larger and greater right of all the people to be secure in their persons and in their homes becomes secondary? It is risky to give absolute and final answers, for just as police work cannot be equated to totalitarian oppression, so devotion to constitutional principles is not equivalent to softness in crime.” (N. Y. L. J., May 26, 1965, p. 4, col. 2.)
Eegardless of how the question of social policy presented by the instant case would be resolved by this court if it were free to decide de novo, freedom of choice does not exist. The “ long arm” of the Supreme Court of the United States has reached down into the Civil Court of the City of New York and supplied the authority which must bind us.
In the case of Plymouth Sedan v. Pennsylvania (380 U. S. 693, 701), the Supreme Court announced its will in this regard. It stated: “It would be anomalous indeed, under these circumstances, to hold that in the criminal proceeding the illegally seized evidence is excludable, while in the forfeiture proceeding, requiring the determination that the criminal law has been violated, the same evidence would be admissible.”
It ruled, unanimously, that evidence obtained illegally by police officers cannot be used in a proceeding for forfeiture of the personal property.
The court decision involved an automobile seized by the Pennsylvania officers on December 16, 1960, after they followed *522 it from Camden, N. J. to Philadelphia. They searched the car, without a warrant, and found 375 bottles of whisky without Pennsylvania tax stamps.
The officers did not prosecute the driver although a Pennsylvania law imposes a fine of from $100 to $500 for transporting untaxed liquor. Instead, they impounded the car, which was worth about $1,000. The court pointed out that the automobile itself was not an article of personal property which was per se contraband, such as narcotics, a gun, etc. The court held that the seizure of the car was a greater punishment that the State could have imposed upon the driver under the criminal laws and was “ [C]learly a penalty for the criminal offense ”.
The case was sent back to the Supreme Court of Pennsylvania to determine whether the officers had probable cause to search the ear without a warrant.
Before this decision, a question existed as to whether the constitutional exclusionary rule enunciated in Weeks v. United States (232 U. S. 383) and Mapp v. Ohio (supra) extended to forfeiture procedures. There had been conflict as to this point in both State and Federal courts. The case of Plymouth Sedan v. Pennsylvania (supra) put the question to rest and it determines the question before this court.
This court has no choice but to decide that the testimony of the policeman in the instant case must be stricken. In the absence of such testimony and on the uncontroverted testimony of the plaintiff, the court has no option but to order the return of the currency held by the Police Property Clerk to plaintiff.