GILBERT v LEACH

1. EVIDENCE—SEARCHES AND SEIZURES—ADMISSIBILITY—CIVIL CASES.

Evidence obtained by an unlawful search is not admissible in civil cases.

2. SEARCHES AND SEIZURES—BLOOD SAMPLES—CONSTITUTIONAL LAW—REASONABLENESS.

The taking of a blood sample from an individual by hospital personnel at the request of police and the furnishing of this sample to police constitutes a search and seizure which is subject to the constitutional requirement of reasonableness (Const 1963, Art 1, § 11).

3. SEARCHES AND SEIZURES—CONSENT—QUESTION OF FACT—EVIDENCE —INFERENCES—TRIAL JUDGE—DISCRETION—APPEAL AND ERROR.

The validity of a consent to be searched is a question of fact to be determined from all of the evidence and reasonable inferences therefrom; this question must be resolved by the trial judge exercising his discretion; his determination will be overturned by an appellate court only if it is clearly erroneous.

4. SEARCHES AND SEIZURES—CONSENT—VALID CONSENT.

Consent to be searched must be unequivocal, specific, and freely and intelligently given, in order to be valid.

5. EVIDENCE—SEARCHES AND SEIZURES—BLOOD SAMPLE ANALYSIS—ADMISSIBILITY.

A court in a civil case properly excluded evidence of the results of a blood sample analysis where a defendant was not informed that a sample was being taken at the request of the police, that it would be sent to the State Crime Laboratory to be analyzed

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence §§ 425–427.

Modern status of rule governing admissibility of evidence obtained by unlawful search and seizure. 50 ALR2d 531.

[2, 5, 6] 68 Am Jur 2d, Searches and Seizures §§ 29, 105.

Blood grouping tests. 46 ALR2d 1000.

[3, 4] 68 Am Jur 2d, Searches and Seizures § 46.

for alcohol content, or that the sample would be used for other than medical purposes.

6. ARREST—SEARCHES AND SEIZURES—CRIMINAL LAW—IMPLIED CONSENT LAW—BLOOD TEST—CONSENT—STATUTES.

The implied consent law operates so that a person is deemed to have given consent to a chemical test of his blood, and therefore a defendant's consent or refusal to submit to a blood test is irrelevant where an extraction properly occurs as incident to a valid arrest (MCLA 257.625c).

Appeal from Cheyboygan, Joseph P. Swallow, J. Submitted June 4, 1975, at Lansing. (Docket No. 22026.) Decided July 23, 1975. Leave to appeal granted, 395 Mich —.

Complaint by Thomas M. Gilbert, administrator of the estate of Frank R. Gilbert, deceased, against Kenneth G. Leach and Russell L. Leach for wrongful death. Defendants' motion for a protective order to prevent admission into evidence of the results of a blood alcohol test performed on defendant Kenneth G. Leach granted. Plaintiff appeals by leave granted. Affirmed.

*Peter Patrick, P. C.,* for plaintiff.

*Collison & Fordney, P. C.,* for defendants.

Before: BASHARA, P. J., and J. H. GILLIS and M. F. CAVANAGH, JJ.

M. F. CAVANAGH, J. Plaintiff appeals by leave granted from the trial court's interlocutory order preventing the introduction into evidence of the results of a blood sample analysis.

Plaintiff, as the administrator of the estate of Frank R. Gilbert, instituted this action claiming that defendant operated in a grossly negligent fashion the automobile in which the defendant

Kenneth Leach and Gilbert were riding, and that this negligence resulted in the collision which caused Gilbert's death. Prior to trial, the complaint was amended to allege that Kenneth Leach was intoxicated at the time of the accident.

During the trial, the defendants moved for a protective order to prevent the admission into evidence of a blood alcohol test performed on Kenneth Leach in the hospital shortly after the accident. Outside of the presence of the jury, the trial court heard testimony by Kenneth Leach and, from the plaintiff, received depositions of several medical personnel. The trial court ruled that the plaintiff had failed to show that Kenneth Leach had consented to taking of a blood sample and that, therefore, the search was unlawful and the analysis had to be excluded. The court, in determining if a consent had been proven, concluded that plaintiff had failed to meet the legal test requiring a showing of an "intentional relinquishment or abandonment of a known right or privilege". The court then granted plaintiff's motion for a continuance to enable him to bring this interlocutory appeal.

This case presents the interesting question of whether it was proper to grant a protective order in order to prevent disclosure, in a civil case, of the test results of a blood alcohol sample taken, while a defendant was conscious, and analyzed by the Michigan State Crime Laboratory.

The resolution of this issue depends primarily upon the application to these facts of the rule of *Lebel v Swincicki,* 354 Mich 427; 93 NW2d 281 (1958). In *Lebel,* a blood sample was taken from an unconscious victim of an automobile collision by hospital medical personnel. The procedure was not

part of his therapeutic treatment, and the sample was delivered to the Michigan State Police. Under these circumstances, the Michigan Supreme Court concluded that the blood sample was taken in violation of the defendant's right to the security of his person under the Michigan Constitution. The fact that the testimony was to be admitted in a civil suit did not change the conclusion that the evidence should have been excluded.

The Court in *Lebel* considered the United States Supreme Court case of *Breithaupt v Abram,* 352 US 432; 77 S Ct 408; 1 L Ed 2d 448 (1957), which held that to admit such evidence in a state court did not violate due process. Although in a Federal court, the Fourth Amendment would prohibit the admission of a blood sample in these circumstances, the case of *Wolf v Colorado,* 338 US 25; 69 S Ct 1359; 93 L Ed 1782 (1949), prevented the amendment's application as a limitation in state courts. *Lebel,* however, concluded that Const 1908, art 2, § 10, which reads substantially the same as the Fourth Amendment, was violated by the blood sample procedure.[1]

*Lebel v Swincicki* resolves a number of the sub-issues inherent in this appeal. First, the case establishes the proposition that evidence obtained by an unlawful search is not admissible in civil cases in this jurisdiction.[2] See also *McNitt v Citco Drilling Co,* 60 Mich App 81; 230 NW2d 318 (1975),

---

[1] The Court in *Lebel,* however, concluded that, although the search was unlawful, reversal was not warranted since the defendant's negligence and his drinking of intoxicating liquor was established by his own admissions. Thus, his intoxication was established beyond question by evidence other than the blood test.

[2] The exclusionary rule in criminal cases has a firm foundation in Michigan. *People v Marxhausen,* 204 Mich 559; 171 NW 557 (1919), made this State the first to adopt the rule after the United States Supreme Court imposed it upon Federal courts in *Weeks v United States,* 232 US 383; 34 S Ct 341; 58 L Ed 652 (1914).

and *Kassner v Fremont Mutual Insurance Co,* 47 Mich App 264, 266; 209 NW2d 490 (1973).[3]

Second, the taking of a blood sample by hospital personnel at the request of the police and the furnishing of this sample to police does constitute a search and seizure which is subject to the constitutional requirement of reasonableness. The exclusionary rule operates to prevent the admission of evidence unlawfully obtained by or at the behest of government officials. *Burdeau v McDowell,* 256 US 465, 475; 41 S Ct 574; 65 L Ed 1048 (1921). *Cf. People v Morgan,* 24 Mich App 660; 180 NW2d 842 (1970). A request by police officers that a blood sample be taken so that the State Crime Laboratory could analyze it for alcohol content does constitute a sufficient connection with the government to constitute state action. *Lebel* and a recent case with almost identical facts, *McNitt v Citco Drilling Co, supra,* support this conclusion.[4]

Subsequent to the opinion in *Lebel,* the United States Supreme Court handed down *Schmerber v California,* 384 US 757; 86 S Ct 1826; 16 L Ed 2d 908 (1966), which upheld the admissibility of the results of a blood sample analysis conducted after the defendant had been arrested for driving under

---

[3] The exclusionary rule has been applied in noncriminal proceedings in other jurisdictions. *See, e.g., One 1958 Plymouth Sedan v Pennsylvania,* 380 US 693; 85 S Ct 1246; 14 L Ed 2d 170 (1965), and the cases cited in Annotation, *Admissibility in Civil Case, of Evidence Obtained by Unlawful Search and Seizure,* 5 ALR 3d 670.

[4] In *Lebel,* it is unclear whether or not a request for the blood sample was made by the police. The sample was, however, delivered to the Michigan State Police. It has been argued that *Lebel* stands for the proposition that in Michigan civil cases state action is not required for the exclusion of illegally obtained evidence. *Recent Developments, Evidence Illegally Seized by Private Persons Excluded From Criminal Prosecution,* 64 Mich L Rev 143, 150 (1965). We think, however, Justice Frankfurter's reading of *Lebel* in *Elkins v United States,* 364 US 206, 246; 80 S Ct 1437; 4 L Ed 2d 1669 (1960) (dissenting opinion), that the conduct was effectively that of the police is the more proper one.

the influence of intoxicating liquor. *Schmerber* does not detract from the Michigan Supreme Court's decision in *Lebel.* First, *Lebel* was grounded upon the state constitutional prohibition of unreasonable searches and seizures.[5] Second, the Court in *Schmerber* emphasized that the Fourth Amendment applies to constrain the intrusion into the body by means of a blood sample if this intrusion was not legally justified or if it was conducted in an improper manner. 384 US 757, 768. In *Schmerber,* unlike the circumstances of *Lebel* or the present case, the search was justified as incident to a lawful arrest and within a recognized exception to the warrant requirement.

The most difficult question posed for this Court is whether the defendant Kenneth Leach gave a valid consent to taking of the blood sample. *Lebel* and *McNitt* offer little assistance on this problem since in those cases the persons from whom the blood was extracted were both unconscious at the time. The trial court in the present case resolved the issue, after a motion for a protective order had been made, by hearing testimony on the issue outside of the jury's presence. It concluded that there had been no showing of an intentional relinquishment of a known right or privilege.

We conclude that the trial court properly examined the evidence relating to consent outside of the presence of the jury. The validity of a consent to search, it is true, is a question of fact to be determined from all of the evidence and reasonable inferences. *People v Chism,* 390 Mich 104, 123; 211 NW2d 193 (1973). This factual question, however, must be resolved by the trial judge exercising his discretion and is to be overturned by an appel-

---

[5] *Lebel* relied upon Const 1908, art 2, § 10 which is substantially the same as Const 1963, art 1, § 11.

late court only if clearly erroneous. 390 Mich 104, 123. In criminal prosecutions, the validity of a consent to search is determined by the trial court after an evidentiary hearing is held on a motion to suppress evidence. See *People v Reed,* 393 Mich 342; 224 NW2d 867 (1975), and *People v Chism, supra.*

Although this is a civil case, we think the determination of the legality of the search, after a motion for a protective order, is better left in the province of the trial court and not the jury. To allow the jury to have complete knowledge of the damaging evidence sought to be excluded and then to ask them not to consider this evidence if it was illegally obtained effectively denies the defendant the benefit of his protective order. Such mental gymnastics should not be required of the jury—in a civil or criminal case. See *McCormick, Evidence* (2d ed), § 53, p 121. *Cf. Jackson v Denno,* 378 US 368; 84 S Ct 1774; 12 L Ed 2d 908 (1964).

Although the trial court properly considered the consent issue outside of the presence of the jury, it did not apply the correct standard to determine the validity of the consent. This is, perhaps, understandable considering the recent developments in this area. The "intentional relinquishment" standard was first enunciated in *Johnson v Zerbst,* 304 US 458, 464; 58 S Ct 1019; 82 L Ed 1461 (1938). Recently, however, the United States Supreme Court has rejected this standard in the context of determining whether a valid consent to search exists. The Court in *Schneckloth v Bustamonte,* 412 US 218, 245; 93 S Ct 2041; 36 L Ed 2d 854 (1973), ruled instead that, absent inherently coercive police tactics, traditional tests of determining voluntariness will apply. This approach has been adopted by the Michigan Supreme Court in *People v Reed,* 393 Mich 342, 364; 224 NW2d 867 (1975).

To be valid, a consent to search must be unequivocal, specific and freely and intelligently given. *People v Kaigler,* 368 Mich 281, 294; 118 NW2d 406 (1962). Viewing the totality of the circumstances in this case, we conclude that the trial court properly excluded the evidence because of the invalidity of any alleged consent. The evidence is unclear as to whether or not permission by the defendant Kenneth Leach for the hospital to extract blood was ever given. Although one nurse testified a consent form was signed by him, he denies this and no form was ever produced. Even assuming he did grant permission, the testimony establishes beyond a doubt that this cannot be considered a voluntary and intelligent act. He was not informed that the sample was being taken at the request of the police, that it would be sent to the State Crime Laboratory—or even that the sample would be used for other than medical purposes.[6] Unless a person who grants permission to the taking of a blood sample knows that the sample may be used for the nonmedical purpose of indicating his state of intoxication, he has not voluntarily and intelligently consented to this bodily search.[7] A free and rational consent must imply that one substantially knows and understands that to which he is consenting.

[6] No question is raised by the present facts concerning a blood sample initially taken for therapeutic treatment and later utilized for liability purposes. The blood sample in this case was clearly taken for the purpose of delivering it to the state police laboratory.

[7] We are not dealing with the extraction of blood after a lawful arrest for driving while under the influence of intoxicating liquor or for driving while a person's operating ability is impaired due to the consumption of intoxicating liquor. Under these circumstances, the implied consent law, MCLA 257.625c; MSA 9.2325(3), operates so that the person is deemed to have given consent to the chemical test of his blood. A defendant's consent or refusal to submit to a blood test is irrelevant if the extraction properly occurs as incident to a valid arrest. *People v Keen,* 56 Mich App 84, 91; 223 NW2d 700 (1974) *lv granted,* 393 Mich 787 (1975). The issue in the present case, however, is whether an *actual* consent was voluntarily given.

Although the trial court did not apply the precisely correct legal standard, a review of the evidence submitted is convincing that it was totally insufficient to justify a conclusion that the consent was voluntary. For this reason, the motion for a protective order to prevent the admission of the blood sample analysis was properly granted.

Affirmed. Costs to defendants.