Leonard Carl TURNER, Appellee,

v.

CITY OF LAWTON, Oklahoma, a municipal corporation, Appellant.

No. 61399.

Supreme Court of Oklahoma.

July 22, 1986.

Rehearing Denied March 10, 1987.

Warren H. Crane, Lawton, for appellee.

Gerald S. Rakes, Asst. City Atty., Lawton, for appellant.

KAUGER, Justice.

The sole question of law presented, which we must answer in the negative, is whether evidence, obtained via a search warrant held invalid and suppressed in a criminal action may be admitted in a related civil administrative proceeding. The validity of the search warrant is not an issue on appeal, thus the underlying facts are irrelevant to our analysis and disposition of the arguments raised by the parties. It is *admitted* by all of the parties that the search warrant was invalid; *hence, the*

*search was conducted as if there were no warrant at all.*[1]

On October 27, 1983, after the court in the criminal case dismissed all charges against Leonard Carl Turner, appellee, he subsequently filed an action for reinstatement as a firefighter for the City of Lawton in the district court of Comanche County, asserting that he had been fired based on incompetent evidence seized in violation of his constitutional rights.[2] The trial court agreed, finding Turner was terminated based on evidence obtained under a "bogus" warrant, and holding the evidence incompetent, and his dismissal improper. The City appealed, conceding the invalidity of the warrant and contending only that the exclusionary rule is inapplicable to civil proceedings. In a split decision, the Court of Appeals reversed the trial court, and certiorari was granted.

## HISTORICAL ANALYSIS OF THE EXCLUSIONARY RULE

The one procedural safeguard which arose directly from events immediately preceding the revolutionary war was the protection against unreasonable search or seizure.[3] The writ of assistance, although seldom exercised in England, was being used by customs officers in the colonies to enter buildings to search for smuggled merchandise. The controversy over these writs continued until the Revolutionary War—the bill of particulars in the Declaration of Independence contained the complaint that the King had sent hither swarms of officers to harass our people.[4] Even after the United States Constitution was adopted, the citizens of the new country feared a recurrence of governmental violations of personal rights and liberties.[5]

When he spoke to the Oklahoma Constitutional Convention, the Honorable J.K. King of Newkirk, President pro tempore of the convention, said that the force and effect of any law is not written upon the printed page, but in the hearts and the intelligence and the conscience of the people. He noted that although the framers of the federal constitution did not believe a Bill of Rights to be necessary, the people refused to accept it without the assurance that such a bill would be incorporated,[6] and, that the Oklahoma Constitution contained provisions to guide officials and to inspire and protect its people. Thereafter, the Convention adopted art. 2, § 30.[7]

1. *Jones v. State,* 632 P.2d 1249–50 (Okla.Crim. 1981); *Kinsey v. State,* 602 P.2d 240, 242 (Okla. Crim.1979).

2. The United States Supreme Court has recently held, although *after* Turner's firing, that federal due process requires a pre-termination hearing. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). We have previously held, that art. 2, § 7 of the Oklahoma Constitution may afford public employees even greater due process protection than the Fourteenth Amendment to the United States when property, interests are implicated. *Umholtz v. City of Tulsa,* 565 P.2d 15, 24 (Okla. 1977). However, for reasons set out in the text, we need not reach these issues to determine that the trial court's decision should be affirmed.

3. See 1 LaFave, "Search and Seizure, A Treatise on the Fourth Amendment," pp. 3–4, § 1.1 (1978); R. Davis, *Federal Search and Seizure,* Ch. 1, pp. 4–5 (Charles C. Thomas Co. 1964).

4. The unanimous Declaration of the thirteen United States of America recounted a long train of abuses and usurpations which resulted in depotism. One of the repeated injuries submitted as proof to a candid world was that the King had "sent hither swarms of Officers to harass our People, and eat out their substance."

5. See LaFave, note 3, supra.

6. A. Ellis, *A History of the Constitutional Convention of the State of Oklahoma,* pp. 62, 76, 79 (Economy Printing Co. 1923). Mr. Ellis was second vice-president of the Constitutional Convention and Speaker Pro Tempore of the First State Legislature of the State of Oklahoma. He wrote to "give to the word a true history of the Constitutional Convention of the State of Oklahoma, that those who follow after us in the future years may know under what circumstances the constitution was written and by what character of men that instrument was framed."

7. The Okla. Const. art. 2, § 30 states: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized."

King's address to the Constitutional Convention echoed James Madison's speech to the first Congress on June 8, 1789 in which Madison said: [8]

"If (these rights) are incorporated into the Constitution, independent tribunals of justice will consider themselves in a peculiar manner the guardians of those rights; they will be an impenetrable bulwark against every assumption of power in the Legislative or Executive; they will naturally be led to resist every encroachment upon rights expressly stipulated for in the Constitution by the declaration of rights.

## THE EXCLUSIONARY RULE HAS BEEN ADOPTED BY THE UNITED STATES SUPREME COURT, THE OKLAHOMA SUPREME COURT, AND THE OKLAHOMA COURT OF CRIMINAL APPEALS

■ The thrust of the exclusionary rule is that evidence illegally obtained by government agents cannot be used against a person whose constitutional rights have been violated by an unreasonable search or seizure. The genesis of the rule can be traced to *Weeks v. United States*, 232 U.S. 383, 393, 398, 34 S.Ct. 341, 344, 346, 58

L.Ed. 652 (1914). In *Weeks*, the United States Supreme Court unanimously rejected the common law view that exclusion of illegally seized evidence constitutes an unjustified interference with the trial court's obligation to permit presentation of all reliable and probative evidence to the trier of fact—and that because the ends justifies the means, courts would not inquire into about how otherwise admissible evidence is gathered.

Subsequently, in *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920), Justice Holmes, speaking for the Court, stated that, "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court, but that it should not be used at all." The Oklahoma Supreme Court in *Hess v. State*, 84 Okl. 73, 202 P. 310, 314–316 (1921) adopted the *Silverthorne* and *Weeks* rationale.[9]

In *Gore v. State*, 24 Okl. Cr. 394, 218 P. 545, 547, 550 (1923) the Oklahoma Court of Criminal Appeals, acknowledging the Oklahoma Supreme Court decision in *Hess*, overruled the common law doctrine that the ends of justice permitted the use of evi-

**8.** 1 Annals of Cong. 439 (1789).

**9.** The Court in *Hess v. State*, 84 Okl. 73, 202 P.310, 314–16 (1921) also cited another state court's decision at length. In *Youman v. Commonwealth*, 189 Ky. 152, 224 S.W. 860, 866, 13 A.L.R. 1303, 1313 (1920) the Kentucky Supreme Court said:

"On these facts the question presented is: Will courts, established to administer justice and enforce the laws of the state, receive, over the objection of the accused, evidence offered by the prosecution that was admittedly obtained by a public officer in a deliberate disregard of law for the purpose of securing the conviction of an alleged offender? In other words, will courts authorize and encourage public officers to violate the law, and close their eyes to methods that must inevitably bring the law into disrepute, in order that an accused may be found guilty? Will a high court of the state say, in effect, to one of its officers, that the Constitution of the state prohibits a search of the premises of a person without a search warrant, but if you can obtain evidence against the accused by so doing you may go to his premises, break open the doors of his house, and search it in his absence, or over

his protest, if present, and this court will permit the evidence so secured to go to the jury to secure his conviction?
It seems to us that a practice like this would do infinitely more harm than good in the administration of justice; that it would surely create in the minds of the people the belief that courts had no respect for the Constitution or laws, when respect interfered with the ends desired to be accomplished. We cannot give our approval to a practice like this. It is much better that a guilty individual should escape punishment than that a court of justice should put aside a vital fundamental principle of the law in order to secure his conviction. In the exercise of their great powers, courts have no higher duty to perform those involving the protection of the citizen in the civil rights guaranteed to him by the Constitution, and if at any time the protection of these rights should delay, or even defeat, the ends of justice in the particular case, it is better for the public good that this should happen, than that a great constitutional mandate should be nullified."

dence by whatever means obtained and refused to admit evidence acquired through an illegal search. The Court held that the use of evidence thus tainted, was not good law, nor even good morals, because the use of unlawful procedures to attain the goals of the state was not calculated to inspire respect for the courts whose primary function is to enforce the law with fairness and impartiality. The Court found that judicial enforcement of the guaranty against unreasonable search or seizure was indispensable to the full enjoyment of personal security, personal liberty, and private property; and that the right to be secure in one's home and person was entitled to the same Constitutional protection as freedom of the press, the right to trial by jury, the writ of habeas corpus, and due process of law.

The federal exclusionary rule was not extended to the states under the due process clause until *1961*, when the United States Supreme Court decided *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Nonetheless, by 1921, some *forty years* earlier, the Oklahoma Supreme Court in *Hess* had incorporated it as a part of the body of Oklahoma law, and the Court of Criminal Appeals had acknowledged it in *Gore* by 1923. The Oklahoma Court of Criminal Appeals, in *Simmons v. State*, 277 P.2d 196, 198 (Okla. Crim. 1954) adopted the *Weeks* reasoning and the *Holmes-Silverthorne* language, and, applying them to the Okla. Const. art. 2, § 30, held that the exclusion of evidence acquired by an unconstitutional search or seizure

was not merely a rule of procedure, but rather a fundamental right under the Oklahoma Constitution[10]—independent of either the Fourth or Fourteenth Amendments of the United States Constitution.

## PURSUANT TO THE OKLA. CONST. art. 2, § 30, OKLAHOMA COURTS HAVE FOUND THE EXCLUSIONARY RULE TO BE A FUNDAMENTAL CONSTITUTIONAL RIGHT APPLICABLE TO CIVIL AND CRIMINAL ACTIONS

Even when a search or seizure is patently illegal, the controversial question—whether its fruits should be excluded from evidence—remains. The applicability of the exclusionary rule to civil proceedings has never been resolved completely by the United States Supreme Court.[11] However, the United States Supreme Court has held that the exclusionary rule is a judicially created remedy operating to safeguard Fourth Amendment rights through its deterrent effect, and that the right is separate from the personal constitutional rights of the party seeking to invoke the rule.[12]

State statutes or state constitutions which afford greater rights than the federal constitution must be determined by following state law. The state of Oklahoma in the exercise of its sovereign power may provide more expansive individual liberties than those conferred by the United States Constitution—it is only when state law provides less protection that the question must be determined by federal law.[13] The Con-

---

**10.** See also *Michaud v. State*, 505 P.2d 1399, 1402 (Okla.Crim.1973).

**11.** *Immigration and Naturalization Service v. Lopez-Mendoza*, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984). Andreoli, "Admissibility of Illegally Seized Evidence in Subsequent Civil Proceedings: Focusing on Motive To Determine Deterrence," 51 Fordham L.Rev. 1019, 1023 (1983); Levin, "Constitutional Exclusion of Evidence in Civil Litigation," 55 Va.L.Rev. 1484 (1969); see also Dix, "Exclusionary Rule Issues As Matters of State Law," 11 Am J. Crim. Law 109, 119 (1983).

**12.** *New Jersey v. T.L.O.*, 469 U.S. 325, 337, 105 S.Ct. 733, 741, 83 L.Ed.2d 720, 731 (1985); *Illinois v. Gates*, 462 U.S. 213, 218, 103 S.Ct. 2317,

76 L.Ed.2d 527 (1983); *reh. den.* 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983); *United States v. Calandra*, 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974).

**13.** State courts using the regulatory, judicial integrity, and personal rights approaches have found in their own constitutions broad protections for their citizens against illegal searches or seizures. See *State v. Anderson*, 286 Ark. 58, 688 S.W.2d 947, 949 (1985); *People v. Bigelow*, 66 N.Y.2d 417, 497 N.Y.S.2d 630, 488 N.E.2d 451 (1985); *Stringer v. State*, 491 So.2d 837 (Miss.1986). See also *South Dakota v. Neville*, 459 U.S. 553, 565, 103 S.Ct. 916, 923, 74 L.Ed.2d 748 (1983); *Pruneyard Shopping Center v. Robins*, 447 U.S. 74, 81, 100 S.Ct. 2035, 2040–41, 64 L.Ed.2d 741 (1980); *Pauley v. Kelly*, 162 W.Va.

stitution of the State of Oklahoma contains independent sources of rights and liberties, which may, under some circumstances, offer more protection than the federal constitution. The Oklahoma Constitution does not merely project a mirror image of the federal constitution. The people of this state are governed by the Oklahoma Constitution, and when it grants a right or provides a principle of law or procedure beyond the protections supplied by the federal constitution, it speaks for every person as the supreme law and final authority for everything which is done in pursuance of its provisions.[14]

Although the United States Supreme Court addressed the issue of whether illegally seized evidence could be used in a subsequent civil action, it did not resolve it completely in *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). In *Janis*, a state officer notified the Internal Revenue Service (IRS) that Janis had been arrested for bookmaking activity. The IRS then assessed wagering excise taxes and levied against the money seized by the officer. The trial court found the police officer's affidavit defective, and granted the motion to quash the warrant. The court did not return the money seized and Janis claimed a refund. The Supreme Court allowed introduction of the evidence illegally seized by state officers to be used in a federal civil proceeding finding that the likelihood of deterring police misconduct by extending the exclusionary rule did not offset the substantial social costs of overturning an otherwise valid conviction.

The *Janis* rationale, however, is by its own terms applicable only to certain fact situations, namely those in which agents of different sovereigns are involved. The Court said:

"[W]e conclude that exclusion from *federal* civil proceedings of evidence unlawfully seized by a *state* criminal enforcement officer has not been shown to have a sufficient likelihood of deterring the conduct of the *state* police so that it outweighs the societal costs imposed by the exclusion. This Court, therefore, is not justified in so extending the exclusionary rule." (Emphasis supplied)

Evidence seized by federal narcotics agents for use in a drug prosecution was not barred by the exclusionary rule from use in a civil tax proceeding in *Tirado v. Commissioner*, 689 F.2d 307, (2d Cir.1982) cert den'd, 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983) because the evidence was not seized with the participation, collusion, or contemplation of use by agents responsible for the proceeding in which the evidence was presented. *Janis* and *Tirado* are factually and conceptually distinguishable from the present case. Here, we have a city law enforcement officer and a city civil proceeding; thus the deterrence value of applying the exclusionary rule is obvious. If on the other hand, the evidence can be used to discharge Turner from his job, even though the criminal charges were dismissed, there would still be a substantial incentive to the city's police officers to engage in further unlawful searches especially when municipal employees are the targets thereof.

We find the logic of *Hess v. State*, 84 Okl. 73, 202 P. 310, 314–16 (1921) more carefully tailored than any available federal decisional law to deter the official misconduct which victimized Turner, and thus to be controlling precedent in this case.[15] Although *Hess* was a forfeiture case and belongs in the quasi-criminal area, many

672, 255 S.E.2d 859, 864 (1979); *Dean v. Crisp*, 536 P.2d 961, 963 (Okla. Cr. 1975); *Bailey v. City of Tulsa*, 491 P.2d 316, 318 (Okla. Crim.1971). See also Pollock, "State Constitutions as Separates Sources of Fundamental Rights", 35 Rutgers L.Rev. 707, 718–19 (1983); Note, "Developments in the Law: The Interpretation of State Constitutional Rights," 95 Harv. L.Rev. 1324, 1364 (1982). Linde, "E. Plurbis —Constitutional Theory and State Courts," 18 Ga. L.Rev. 165, 179

(1984); Kohane, "The Exclusionary Rule: Alternate Theories of Exclusion As Basis for State Court Activism", Annual Survey of American Law, 95 (1984).

**14.** *In re McNaught,* 1 Okl. Crim. 528, 99 P. 241, 254 (1909).

**15.** See notes 9 and 35 for controlling language in *Hess.*

jurisdictions[16] considering this question have forbidden the introduction of the fruits of illegal searches in a host of derivative civil actions including replevin,[17] recovery on a fire insurance policy,[18] defamation,[19] wrongful death,[20] termination of tenancy;[21] and discharge proceedings of a civilian air force employee for unlawful possession of fire arms and for furnishing misleading educational qualifications.[22]

The Supreme Court of the State of Oklahoma is not required to follow *Janis,* or *Tirado,* because these cases are too restrictive for application under the standards of Oklahoma's fundamental law—the new version of the exclusionary rule is merely a federal rule of evidence. Even if these cases could be construed to announce neoteric federal constitutional dogma, this Court is unfettered in its enforcement of the Oklahoma exclusionary rule. The Supremacy Clause of the United States Constitution, Art. VI, § 2, is pertinent only if state constitutions afford their citizens lesser rights and protections.[23] While the

federal courts have vacillated in applying the exclusionary rule, the courts of this jurisdiction have been consistent.[24] An underlying reason for the slightly different approach to the rule taken by Oklahoma may be based on small, but significant differences between the language of the Fourth Amendment and art. 2, § 30. The Oklahoma Constitutional prohibition is broader in scope than its federal counterpart, forbidding any unreasonable search *or* seizure and requiring that the place to be searched be described with greater particularity than does the federal constitution.[25] This distinction between the United States Constitution and the Constitution of the State of Oklahoma is readily demonstrable.[26]

■ Article 2, § 30 must be strictly construed, and unless it can clearly be shown that the officers making the search complied with the legal prerequisites necessary to constitute a lawful search, the evidence seized by an unreasonable search must be

16. See Annot., "Admissibility, In Civil Case, of Evidence Obtained By Unlawful Search and Seizure," 5 A.L.R.3d 670 (1966).

17. *Reyes v. Rosetti,* 47 Misc.2d 517, 262 N.Y.S.2d 845, 850 (1965).

18. *Kassner v. Fremont Mutual Ins. Co.,* 47 Mich. App. 264, 209 N.W.2d 490, 492 (1973).

19. *Selby v. Savard,* 134 Ariz. 222, 655 P.2d 342, 347 (1982).

20. *Gilbert v. Leach,* 62 Mich. App. 722, 233 N.W.2d 840, 842 (1975).

21. *Tejdada v. Christian,* 71 A.D.2d 527, 422 N.Y. S.2d 957, 960 (1979).

22. *Powell v. Zuckert,* 366 F.2d 634, 639 (D.C. Cir.1966).

23. See *Stringer v. State,* note 13, infra; *Michaud v. State, see* note 10, supra; and note 13, supra for a fuller citation of authorities; *Simmons v. State,* 277 P.2d 196, 198 (Okla.Crim.1954).

24. See *Hess v. State,* note 9, supra; *Michaud v. State,* note 10, supra.

25. King's speech to the Constitutional Convention embodies the reasons for significant difference in the Oklahoma Constitution. He said ...

"While we are told by some able judges that nothing should be put into the Constitution but what time and experience has been demonstrated to be true, ... and while that is no doubt correct ..., it is nevertheless true that there are self-evident truths in this day as there were in 1776." See A. Ellis, *A History of the Constitutional Convention of the State of Oklahoma,* pp. 62 (Economy Printing Co. 1923).

26. The Fourth Amendment of the United States Const. provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

See note 7, supra, for comparisons. The Oklahoma statutes concerning search and seizure, 22 O.S. 1981 §§ 1221 et seq., clearly track the Oklahoma Constitution. The intent of the framers of the constitution to protect against unreasonable search or seizure is exemplified by sanctions provided by 22 O.S. 1981 § 1239 which has remained unchanged since 1910. It states: "A person who maliciously and without probable cause procures a search warrant to be issued and executed is guilty of a misdemeanor".

suppressed.[27] The absolute security granted by the Okla. Const. art. 2, § 30 against unlawful search or seizure exists without reference to the guilt or innocence of the person whose property is searched, and without consideration of whether the proceeding is civil or criminal[28] in nature.

Based on the traditional concept of the sanctity of the home and peaceful enjoyment of its privacy,[29] the exclusionary rule receives its most rigid application when a dwelling house is involved in a search. Lord Coke said, "The house of every man is to him a fortress, as well for his defense against injury and violence as for his repose." When Parliament moved to abolish general unrestricted warrants, General William Pitt lead the attack with the justly renowned remarks:

> "The poorest man may in his cottage bid defiance to all the force of the Crown. It may be frail; its roof may shake; the wind may blow through it; the storm may enter; the rain may enter; but the King of England may not enter; all his force dares not cross the threshold of the ruined tenement."

In short, a man's home is his castle.

■ The citizens of Oklahoma possess a double-barrelled source of protection which safeguards their homes from unauthorized and unwarranted intrusions[30]—the Fourth Amendment and art. 2, § 30. This dual safeguard flows directly from the United States Supreme Court's explicit acknowledgement of the right of state courts, as the final interpreters of state law to impose higher standards on searches and seizures than those required by the federal constitution, even if the state constitutional provision is similar to the Fourth Amendment.[31] Even if we were to find that appellee's Fourth Amendment rights had not been violated, which we could not do under the facts presented, our constitutional prohibition against unreasonable searches or seizures requires that the evidence be suppressed in the termination hearing. One of mankind's most precious liberties is the right to earn a livelihood.[32] It would appear to be wholly at odds with our heritage to allow the admission of evidence illegally seized by government agents in discharge proceedings.[33]

The Okla. Const. art. 2, § 30 constitutes a *bona fide, separate, adequate, and independent grounds upon which we rest our finding*[34] that the illegal search prohibition pertains equally to civil and criminal proceedings. Our Constitution does not say that the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches or seizures can be violated by government agents in civil actions, or that facially defective warrants may be issued if criminal sanctions are not invoked.

---

**27.** *Crim v. State,* 78 Okl. Cr. 153, 145 P.2d 444–45 (1944).

**28.** *Gore v. State,* 24 Okl.Cr. 394, 218 P. 545, 550–51 (1923). *Castleberry v. State,* 678 P.2d 720, 722 (Okla. Crim.1984). See *Ashbrook v. State,* 92 Okl. 287–88, 219 P. 347, 349 (1923); and Annot., "Admissibility of evidence obtained by illegal search and seizure", 24 A.L.R. 1408, 1417 (1923). See also, Annot. "Admissibility, In Criminal Case, of Evidence Obtained by Search by Private Individual," 36 A.L.R. 3d 553 (1971).

**29.** *California v. Carney,* 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406, 412 (1985); Davis and LaFave, note 3, supra.

**30.** Walinski and Tucker, "Expectations of Privacy: Fourth Amendment Legitimacy Through State Law," 16 Har. Civ. Rights Civ. Lib. L.Rev. 1, 4 (1981).

**31.** *Cooper v. California,* 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730, 734 (1967); See also *State v. Von Bulow,* 475 A.2d 995, 1019 (R.I. 1984) *cert. den'd.,* 469 U.S. 875, 105 S.Ct. 233, 83 L.Ed.2d 162 (1984).

**32.** *Douglas, J. concurring, Peters v. Hooby,* 349 U.S. 331, 352, 75 S.Ct. 790, 800, 99 L.Ed. 1129, 1143 (1955).

**33.** *Powell v. Zuckert,* 366 F.2d 634, 639 (D.C.Cir. 1966).

**34.** *Michigan v. Long,* 463 U.S. 1032, 1041, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201, 1214 (1983); *New Jersey v. Haskell,* 100 N.J. 469, 495 A.2d 1341, 1347 (1985).

Courts organized and established for the purpose of enforcing the laws of the state cannot permit an order of termination to stand, after finding a violation of the law and a disregard for the constitutional protection guaranteed to every citizen of this state.[35] Traditionally, Oklahomans have zealously guarded their right to privacy and their protection against unreasonable searches or seizures.[36] *If the time has come for a more restrictive exclusionary rule, a constitutional amendment should serve as the people's vehicle for change.*

This decision is not founded on a desire to protect a possible miscreant, but rather to insure that all citizens are enfolded within the embrace of protections which have remained inviolate since the framers of the Declaration of Independence sought relief from harrassment by swarms of the King's officers and since the Oklahoma Constitutional Convention recognized the self-evident truths of the time.[37] History bears out the continuing need for this safeguard—one need only look to modern world history and today's headlines to appreciate the need for prohibitions against unwarranted or unreasonable search or seizure.

CERTIORARI GRANTED; OPINION OF COURT OF APPEALS VACATED; TRIAL COURT AFFIRMED.

DOOLIN, V.C.J., and LAVENDER, HARGRAVE and OPALA, JJ., concur.

ALMA WILSON, J., concurring in judgment only.

SIMMS, C.J., HODGES and SUMMERS, JJ., dissent.

**35.** In *Hess v. State,* 84 Okl. 73, 202 P. 310, 315–16 (1921), the unanimous Court said:

"The function of the courts of this country is to enforce a government of laws, and not a government of men. The final arbiter in all cases presented to appellate courts is the substantive law as controlled, limited, and regulated by the written law (meaning by the written law, the federal and state Constitutions, and the statute law enacted in accordance with the Constitutions). When an appellate court abandons the law as thus defined, it puts its ear to the ground to determine what is popular and what will or will not please the popular will. Such a court is then treading near a precipice that may engulf this government in anarchy. Such a court has broken

SIMMS, Chief Justice.

I respectfully dissent.

I agree with the City of Lawton that the exclusionary rule does not apply to this administrative personnel proceeding.

Leonard Turner was dismissed from the Lawton Fire Department when amphetamine, a controlled substance, was found in his residence by police executing a search warrant.

He was charged with possession of cocaine, with intent to distribute. While the criminal charges were pending, Turner pursued an appeal of his dismissal to the Personnel Board and was given a full hearing. The City presented evidence of the amphetamine to justify his dismissal. The Board affirmed the termination of his employment.

Subsequently, in the criminal case, the trial court held the affidavit was insufficient. The search warrant was set aside, the evidence suppressed and the criminal charge dismissed.

It was then that Turner sought reinstatement from the district court and review of that administrative decision, contending it was based on an illegal search which violated his constitutional rights.

The trial court agreed with him and found his dismissal improper. The Court of Appeals, in what I believe to be a well reasoned opinion, reversed the trial court, 56 OBJ 535. The Court of Appeals adopted

with the law and the accepted wisdom of the ages, and is accepting in lieu thereof the rule of the popular will, and this is only a euphonious name for mob law and means nothing else but mob law in its final analysis. Between these two positions there can be no halting of the ways if we are to save our government from confusion and ultimate anarchy."

**36.** Oklahoma did not recognize the automobile exception to the exclusionary rule until 1974 in *Hughes v. State,* 522 P.2d 1331, 1334 (Okla. Crim.1974).

**37.** See notes 4, 6, 25, supra.

the rationale of the Second Circuit in *Tirado v. Commission of Internal Revenue*, 689 F.2d 307, (2nd Cir.1982), *cert. denied*, 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983), wherein that court established guidelines for the application of the balance of interests tests fashioned by the Supreme Court in *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed 2d 561 (1974); and *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed 2d 1046 (1976).

That analysis first seeks to determine the motivation of the officers who seized the evidence and examine whether their interests are related to the civil proceeding. This approach best serves society by excluding reliable and relevant evidence only when necessary to protect the purposes of the Fourth Amendment.

Here there is no close relationship between the search by police and subsequent use of the evidence by the city and personnel board. Those proceedings are too remote from the primary interests served by officers seizing the drugs, and there is no evidence of collusion between police and city officials.

The primary purpose of the exclusionary rule is to deter future police misconduct. That purpose is clearly not served by excluding this evidence, and society's interest in maintaining levels of integrity and fitness of its public servants far outweighs any possible interest protected.

I do not believe that allowing the illegally seized evidence in the administrative proceeding violated either the Fourth Amendment or Article 2, Section 30, of our Constitution.

I am authorized to state that Justices HODGES and Justice SUMMERS join in this dissent.

ALMA WILSON, Justice, concurring in judgment only:

The exclusion of relevant evidence in a non-criminal proceeding, albeit by technical illegal seizure in a prior unrelated criminal investigation, is to my view justified *only* under such facts and circumstances as those disclosed from my examination of the record in this particular case.

I do not believe that relevant evidence *ipso facto* should be excluded from admission in any and all subsequent proceedings of a civil nature, simply because such has been excluded from an earlier criminal trial. I recede from what I perceive to be the wide-sweep of the majority opinion. I believe the competing interests of the right of the individual to privacy vis-a-vis the right of the public to maintain levels of integrity and fitness of its public servants must be *balanced* as in *Tirado v. Commission of Internal Revenue*, (2d Cir.1982), 689 F.2d 307, *cert denied.*, 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983), but that in this administrative proceeding a balancing requires exclusion to protect the purposes of the Fourth Amendment.