Dear Director Saffle,
¶ 0 This office has received your request for an Attorney General Opinion in which you ask, in effect, the following question:
May the Oklahoma Department of Corrections require drugtesting, including random, reasonable suspicion andpre-employment, pursuant to the Standards for Workplace Drug andAlcohol Testing, 40 O.S. Supp. 1997, §§ 551[40-551] to 565, for allemployees and employee candidates?
¶ 1 Your question raises issues concerning the Fourth andFourteenth Amendments to the United States Constitution. Generally, the Fourth Amendment, which is made applicable to the states by virtue of the Fourteenth Amendment, guarantees an individual's right to be free from unreasonable searches and seizures. The answer to your question therefore begins with a discussion of the Fourth Amendment as it applies to governmental drug testing.[1]
 I. THE FOURTH AMENDMENT AND GOVERNMENTAL DRUG TESTING
¶ 2 It is well settled that drug tests which are imposed by governmental agencies are "searches" within the meaning of theFourth and Fourteenth Amendments. Chandler v. Miller,520 U.S. 305, 117 S.Ct. 1295, 1300, 137 L.Ed.2d 513 (1997). See alsoVernonia School District 47J v. Acton, 515 U.S. 646,115 S.Ct. 2386, 132 L.Ed.2d 564 (1995); National Treasury Employees Unionv. Von Raab, 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685
(1989); Skinner v. Railway Labor Executives' Association,489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989); and Benavidezv. City of Albuquerque, 101 F.3d 620, 623-624 (10th Cir. 1996).
¶ 3 The Fourth Amendment prohibits unreasonable searches and seizures. Generally, this restraint prohibits warrantless searches unless the search is based on some individualized suspicion of wrongdoing. Chandler, 117 S.Ct. at 1298. Exceptions to this rule, however, have been recognized by the United States Supreme Court and Circuit Courts.
¶ 4 For instance, the United States Supreme Court has upheld governmental drug-testing programs for student athletes, customs officials, and railway employees. Vernonia, 515 U.S. 665-666; Von Raab, 489 U.S. at 677; and Skinner, 489 U.S. at 634. The Tenth Circuit upheld the random drug testing of inmates inLucero v. Gunter, 17 F.3d 1347, 1350 (10th Cir. 1994). The Oklahoma Court of Appeals has upheld the drug testing of school bus drivers in that there was a "sufficient safety interest" involved. ISD-1 of Tulsa County v. Logan, 789 P.2d 636, 638
(Okla.Ct.App. 1989).
¶ 5 While not binding on Oklahoma, the Ninth Circuit upheld random drug testing for certain employment classes within the Federal Bureau of Prisons. American Federation of GovernmentEmployees v. Roberts, 9 F.3d 1464 (9th Cir. 1993). The Court upheld the random testing of:
 1. those employees in primary law enforcement positions who, in the regular course of their duties, are issued or given access to firearms for use on a daily or weekly basis;
 2. those licensed physicians and dentists in primary law enforcement positions who, in the regular course of their duties, diagnose, treat, or directly supervise the diagnosis or treatment of patients on a daily or weekly basis;
 3. those employees in primary law enforcement positions who (a) have direct contact with inmates (b) on a daily or weekly basis (c) for periods of one hour or more each day of contact.
Id. at 1465-1466.[2]
¶ 6 These constitutionally permissible suspicionless searches, however, are "closely guarded" and require a "context-specific inquiry" by the Courts. Chandler, 117 S.Ct. at 1298, 1301. "[S]pecial needs, beyond the normal need for law enforcement" may justify a Fourth Amendment intrusion. Id. at 1301, citingSkinner, 489 U.S. at 619.
 In limited circumstances, where the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion.
Skinner, 489 U.S. at 624.
¶ 7 To support random governmental testing, the special need, or important governmental interest, must be substantial — enough to override the individual's privacy interest — enough to suppress the Fourth Amendment requirement of individualized suspicion. Chandler, 117 S.Ct. at 1303.
¶ 8 You also asked about "reasonable suspicion" drug testing. "Reasonable suspicion" drug testing of a government employee is allowed and does not require a warrant when there is a "reasonable suspicion" that the employee was engaging in unlawful activity involving controlled substances. Benavidez v. City ofAlbuquerque, 101 F.3d 620, 624 (10th Cir. 1996) (citations omitted).
 Reasonable suspicion depends both upon the content of information possessed and its degree of reliability.
Id. (citations omitted).
¶ 9 The Department of Corrections, therefore, must have a "special need" or "important governmental interest," which outweighs a person's privacy interest, to impose a drug testing requirement for all employment candidates or to impose random drug testing for all employees. To test an employee based on "reasonable suspicion," the Department of Corrections must have reliable information which would lead a reasonable person to suspect on-the-job drug use, impairment, or possession. Id.
 II. UNITED STATES SUPREME COURT'S MOST RECENT VIEW
¶ 10 In its most recent holding on the drug-testing issue, the United States Supreme Court struck down a Georgia statute which required drug tests for candidates for certain state offices. Under the Georgia statute, before a candidate could qualify for the ballot, he or she had to present a certificate which stated the candidate had submitted to a urinalysis drug test within 30 days prior to qualifying and that the test was negative.Chandler, 117 S.Ct. at 1299.
¶ 11 In considering the constitutionality of the statute the Court considered the following factors:
 — Georgia's claim that the use of illegal drugs is incompatible with holding high state office;
 — Georgia's claim that the use of illegal drugs draws into question an official's judgment and integrity;
 — Georgia's claim that the use of illegal drugs jeopardized the discharge of public functions, including antidrug laws;
 — Georgia's claim that the use of illegal drugs by an elected official undermines public confidence and trust in the official. Id. at 1297.
¶ 12 Additionally, the Court considered the complete lack of any indication there was a "concrete danger." The Court noted that the statute was not enacted in response to "fear or suspicion" that candidates or elected officials were engaged in drug use. In fact, the Court recognized that the statute was not truly designed to identify drug offenders because the test could be scheduled at any time by the candidate allowing users to abstain prior to the test and avoid a positive test result.Chandler, 117 S.Ct. at 1303-1304. The Court determined that the statute which sought to project a positive "drug-free" image and a commitment to fighting drug abuse, was "symbolic, not `special.'" Id. at 1305. The majority opinion closed as follows:
 We reiterate, too, that where the risk to public safety is substantial and real, blanket suspicionless searches calibrated to the risk may rank as "reasonable" — for example, searches now routine at airports and at entrances to courts and other official buildings. But where, as in this case, public safety is not genuinely in jeopardy, the Fourth Amendment precludes the suspicionless search, no matter how conveniently arranged.
Id. (citations omitted).
 III. A TENTH CIRCUIT ANALYSIS
¶ 13 In Rutherford v. City of Albuquerque, 77 F.3d 1258 (10th Cir. 1996), the Tenth Circuit held that the city's drug testing of a city commercial truck driver violated the Fourth Amendment. In its narrow holding, the Circuit Court focused on the policy and procedure the city used in this particular instance. The Court declined to decide whether the city had improperly classified all city truck drivers as "safety sensitive." Id. at 1261. The Court focused on the unique facts of the case and found that the circumstances surrounding this employee's urinalysis "resulted in a substantially more intrusive search that those upheld by the Supreme Court in Skinner and Von Raab." Id.
 IV. STATE CONSTITUTIONAL PROVISION MAY OFFER MORE PROTECTION THAN FEDERAL CONSTITUTION The state of Oklahoma in the exercise of its sovereign power may provide more expansive individual liberties than those conferred by the United States Constitution — it is only when state law provides less protection that the question must be determined by federal law. The Constitution of the State of Oklahoma contains independent sources of rights and liberties, which may, under some circumstances, offer more protection than the federal constitution.
Turner v. City of Lawton, 733 P.2d 375, 378-379 (Okla. 1986).
¶ 14 Article II, § 30 of the Oklahoma Constitution forbids any unreasonable search or seizure. Turner, 733 P.2d at 380. Further, while the facts of the case do not involve drug testing, the Oklahoma Supreme Court has held that illegally obtained evidence which was excluded in a criminal action was also properly excluded in a related civil administrative proceeding. Id. Thus, although the United States Supreme Court has occasionally allowed the introduction of illegally seized evidence in federal civil proceedings, the Oklahoma Supreme Court has recognized that the people of the State of Oklahoma may be entitled to greater rights in civil cases than those imposed by the Fourth and Fourteenth Amendments of the United States Constitution. Id. at 379, 380. See United States v. Janis,428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) and Tirado v.Commissioner, 689 F.2d 307 (2d Cir. 1982).
 V. INHERENT FACTUAL DETERMINATION REQUIRED
¶ 15 The determination of whether a drug-testing policy which is administered by the government is constitutional turns on the specific facts and the "special" governmental need in each individual case.
 [T]he appropriate inquiry in each case is "whether the government's need outweighs the individual's privacy interest."
Saavedra v. City of Albuquerque, 73 F.3d 1525, 1532 (10th Cir. 1996) (citations omitted).
¶ 16 It is outside the purview of an Attorney General's Opinion to make a factual determination as to whether there is an identifiable "special" need in the operation of prisons that outweighs an individual's expectation of privacy. 74 O.S. Supp.1997, § 18b[74-18b](A)(5). It is important to note that the analysis used by the courts regularly focuses on the nature and duties of the specific job classification in question rather than the agency function as a whole. While some positions may be subject to random testing (e.g., law enforcement personnel that carry firearms), other positions (e.g., clerical staff) may not be subject to testing. The inherent risk of the duties performed by the employee and the government's special need for testing must be balanced with that individual's Fourth andFourteenth Amendment rights.
¶ 17 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Drug tests which are imposed by governmental agencies are"searches" within the meaning of the Fourth andFourteenth Amendments. Chandler v. Miller, 520 U.S. 305, 117 S.Ct. 1295,1300, 137 L.Ed.2d 513 (1997).
 2. "[S]pecial needs, beyond the normal need for lawenforcement" may justify a Fourth Amendment intrusion. Chandlerv. Miller, 520 U.S. 305, 117 S.Ct. 1295, 1301, 137 L.Ed.2d 513(1997) (citations omitted).
 3. The appropriate inquiry in each case is "whether thegovernment's need outweighs the individual's privacy interest."Saavedra v. City of Albuquerque, 73 F.3d 1525, 1532 (10th Cir.1996) (citations omitted).
 4. It is outside the purview of an Attorney General's Opinionto make a factual determination as to whether there is anidentifiable special need in the operation of prisons thatoutweighs an individual's expectation of privacy. 74 O.S. Supp.1997, § 18b(A)(5).
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
GRETCHEN ZUMWALT ASSISTANT ATTORNEY GENERAL
[1] Title 40 O.S. Supp. 1997, § 554[40-554](1) of the Standards for Workplace Drug and Alcohol Testing Act, allows a public employer to require drug tests of job applicants. This statute must, of course, comply with the United States Constitution.
[2] Your office cited Stigle v. Clinton, 110 F.3d 801 (D.C. Cir. 1997), which upheld random governmental drug testing of all employees having access to a building which was on the White House security perimeter. The Court reasoned that the safety of the President and Vice-President outweighed the individual's privacy interests. The District of Columbia Circuit is not binding on Oklahoma.